## POLK COUNTY, Appellee, v. ROBERT A. OWEN et al., Appellants.

**TRIAL:** Objections—Proper and Improper Testimony—Motion to Strike. Motions to strike both proper and improper testimony are properly overruled.

**APPEAL AND ERROR:** Harmless Error—Fact Otherwise Shown. Refusal to receive material evidence of a fact otherwise clearly shown by the evidence is error without prejudice.

**TRIAL:** Excluding Immaterial Cross-Examination. No error results from excluding cross-examination which calls for nothing more than had already been testified to.

**TRIAL:** Objections—Sufficiency. "Incompetency" does not embrace the idea of "immateriality."

**EVIDENCE:** Conclusion—Needs of Pauper. The question whether there had been any need of an alleged pauper's making application for charity because of the parents' refusal to extend assistance calls for an unallowable conclusion.

**EVIDENCE:** Immateriality—What One Might Have Done. Whether a person would have extended aid to an alleged pauper, had such person known of his interest in certain property, is wholly immaterial to the issue of indigency.

**EVIDENCE:** Conclusion—Cause of Death. The naked statement that one was or was not the cause of a death is an unallowable conclusion.

**EVIDENCE:** Conclusion—Allowable Conclusion. Whether parents were kind and gentle, or furnished a sanitary place to their son, is, when material, an allowable conclusion.

**PAUPERS:** Indigency—Evidence. Statements of a witness that he and others had concluded, on the basis of what had been told them, to call the attention of the public officials to the condition of an alleged pauper, is a mixture of hearsay and implied conclusion, and inadmissible.

**PAUPERS:** Parents' Ability to Contribute—Sufficiency of Evidence. Evidence reviewed, in an action to require parents of a son, as an alleged pauper, to contribute a monthly sum to the support of him and his family, and held sufficient to sustain a

finding that they were financially able to contribute to his sup-
port to the extent of $20 per month.

**APPEAL AND ERROR:**  Reservation of Grounds—Motion for Di-
rected Verdict.  Any error in the overruling of a motion to
direct a verdict at the close of the plaintiff's evidence is waived
where the defendant thereafter introduces evidence and fails
to renew the motion at the close of all the evidence.

**TRIAL:**  Instructions—Objections and Exceptions—Insufficiency.  As
to an instruction given before the repeal of Sec. 3705-a, Code
Supp, 1913, an objection made for the first time in the motion
for new trial does not constitute a sufficient exception to the
instruction.

**TRIAL:**  Argument and Conduct of Counsel—Failure to Discuss Brief
Points.  Failure on appeal to discuss the brief points in the
extended argument is not a waiver, as such argument is purely
optional.

**TRIAL:**  Instructions—Objections and Exceptions—Failure to Re-
quest Fuller Instructions.  Mere paucity in instructions cannot
be complained of on appeal, unless fuller instructions were
asked and refused.

**TRIAL:**  Requested Instructions—Refused Instructions Otherwise
Covered.  There is no error in refusing instructions, where the
requested matters are covered by others given.

**TRIAL:**  Instructions—Applicability.  When plaintiff proceeds
throughout the trial on the theory and assumption that he
must prove a certain fact, in order to recover, it is error for
the court to refuse an instruction on that theory, when re-
quested by defendant.

**PAUPERS:**  Public Support—Abandonment by Parents.  In a suit
by a county under Sec. 2219, Code, 1897, to obtain an order
compelling the parents to furnish support for the son, an al-
leged pauper, abandonment of the son is not an issue, as pro-
visions of Secs. 2220 and 2221, Code, 1897, as to "abandonment,"
apply only to suits brought to seize property of paupers' rel-
atives.

**TRIAL:**  Requested Instructions—Invited Error.  Where parents of
an alleged pauper asked the trial court to treat a question of
the adequacy of the pauper's property, as preventing him from
being a poor person, as a question of fact for the jury, they are

estopped to claim, on appeal, that the adequacy of his property should not have been submitted to the jury, but that the court should have determined, as a matter of law, that, on account of said property, he was not a pauper.

**APPEAL AND ERROR:** Reservation of Grounds—Motion for New Trial. Notwithstanding that parents asked the court to treat the question of the adequacy of their son's property, as bearing upon his pauperism, as a question for the jury, they did not waive the right to urge that the court erred in overruling the granting of their motion for a new trial, on the ground that the verdict was not supported by the evidence; as, on such motion, the court would not be concluded by the fact that the jury had found the son to be a pauper, notwithstanding the fact that he owned a $6,600 interest in Iowa land. If he was not a pauper, under the statute, the verdict against the parents should have been set aside, as against the evidence, and the question of compelling them to make money provision monthly for the son should have been postponed until his said property had been exhausted.

**PAUPERS:** Indigency—Jury Question. Even where an alleged pauper is possessed of some property, it will ordinarily be a question for the jury whether, despite such ownership, he is a pauper, within the meaning of statutes requiring support from relatives.

**PAUPERS:** Poor Person—Definition. The word "poor," as used in Sec. 2219, Code, 1897, has a restricted and technical meaning, and is practically synonymous with "destitute," denoting extreme want and helplessness.

**PAUPERS:** Indigency—Evidence. One who owns an undivided one-eighth interest, worth $6,600, in Iowa farm lands, free of all incumbrances, save a life estate of a woman 56 years old and in bad health, and who has made no effort to borrow or sell such interest, is not a "pauper," under Sec. 2219, Code, 1897, and the laws for the relief of the poor.

**CONSTITUTIONAL LAW:** Principles of Construction—Moot Questions. The courts decline to pass upon the constitutionality of statutes unless an affirmance or reversal depends upon the validity or invalidity of such statutes.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

OCTOBER 2, 1919.

APPEAL from an order that defendants and appellants pay to their son, George Owen, an alleged pauper, a stated sum monthly, for the relief, maintenance, and care of said son.—*Reversed*.

*Jordan & Jordan*, for appellants.

*George A. Wilson, Ward C. Henry*, and *Arthur T. Wallace*, for appellee.

SALINGER, J.—I. There was an unchallenged allegation in the petition to the effect that the county and charitable associations have been furnishing support to the alleged pauper. The witness Bowers testified, without objection, that certain persons who were officers of some charitable association had said they would see to obtaining $4.00 a month from the trustees. At this point, objection was made that this was immaterial, incompetent, and hearsay, and the objection overruled, under due exception. If matters had remained thus, it would probably be true that this testimony was objectionable; because a mere undertaking by someone to obtain such help from the trustees supports no issue in the case. But the witness continued that the said sum was in fact obtained, and the jury could find that it was paid over to the alleged indigent; and this is proper evidence of indigency. In connection with this, there was further improper testimony to the effect that the wife of the alleged pauper said to these men that, if they would raise this $4.00 and allow it to be used as rent money, Mrs. Owen believed she could furnish the table. At this point, defendant moved "to strike the entire testimony," for being immaterial, irrelevant, and incompetent. This was overruled, and the ruling is made the basis of complaint. As seen, some of the testimony was proper. The motion to strike blanketed the proper testimony with the improper. The objection could not be reframed by the court. It was bound to pass upon

1. TRIAL: objections: proper and improper testimony: motion to strike.

it as presented. Being called upon by such motion to ex-
clude the proper with the improper testimony, and without
separation in the motion, overruling this motion was not
error. See *Mitchell v. Beck*, 178 Iowa 786, and *Mohler v.
Guest Piano Co.*, 186 Iowa 161.

### 1-a

. Dr. Bunce was asked whether he had not told the al-
leged pauper that he had talked with the parents of the
pauper, and they had told him to say that, if help was
needed, the son could come back to their
home with his family. On objection that
the inquiry was incompetent, irrelevant,
immaterial, and not proper cross-examina-
tion, answer was not permitted. We think
the ruling was without prejudice, were it erroneous; for
evidence that such an offer was made and communicated
to the son is found elsewhere in the record. The ruling was
right for other reasons, which will be stated in another
connection.

2. APPEAL AND
ERROR: harm-
less error: fact
otherwise
shown.

### 1-b

The witness Duckworth was permitted, over the ob-
jection that the same was hearsay and incompetent, to
state, in effect, word had come to her that the father of the
alleged pauper had stopped the visit of the
doctor, and that the doctor told the wit-
ness the father had stopped his attendance,
but that he was willing to go again when
he was called, but that, of course, he could not go there
so long as the parents closed the doors in his face. Un-
doubtedly, this is hearsay. But the ruling which per-
mitted this testimony is harmless, because, for reasons
stated in another connection, the attitude of the father
with reference to permitting medical attendance is im-
material.

3. TRIAL: exclud-
ing immaterial
cross-examina-
tion.

### 1-c

George testified he learned photography when he was a boy, but was not a photographer,—"that is, not up-to-date, or anything like that;" and that he was too nervous to do anything with it; that his father bought a camera for himself, and loaned it to him, and he still has it. On cross-examination, he was asked, "Q. You understand photography, then, some?" Objection was made that this was incompetent, irrelevant, and immaterial, and not proper cross-examination, and for the further reason that it had all been gone into. This objection was sustained, and the ruling is complained of.

To say the least, the last part of the objection is well taken; for, as seen, the witness had testified in chief, without objection, what amounts clearly to a statement that he understood photography to some extent.

### 1-d

The witness Bowers said that he had talked with the son, and "he told me that he had an undivided interest in some property which would come to him in the future. He derived no income at this time from them." 4. TRIAL: objections: sufficiency. This appears in the record in narrative form; yet objection was made that it was leading and incompetent and immaterial, and the overruling of this objection is now complained of. We cannot well hold that there was a leading question, because the form of question is not indicated. The matter is clearly not immaterial. If vulnerable to objection, the mere statement that it is "incompetent" is not sufficient to raise such objection.

### 1-e

Without objection, Mrs. Robt. Owen, one of the defendants, was permitted to testify, as a witness for the defendants, that she was on friendly terms with all her children. After the answer was given, counsel for defend-

ant objected that the matter in question was irrelevant, incompetent, and immaterial. The court seems to have agreed to this view, and said, speaking to the objection, that "the relation to the other children don't have anything to do with this case. We are just dealing with the one child," —and then someone excepted.

It would seem that the defendants are now complaining of an answer they themselves elicited, because the court agreed with them, after they had put in this testimony, that same was irrelevant.

### 1-f

Appellant complains the court erred in refusing to permit Marion Owen to testify as to the treatment by the defendants of their son Robert. What occurred is this:

"Q. Do you know what sort of treatment Robert received? A. Yes. (Objected to as incompetent, irrelevant, and immaterial to any issue in this case. Court: The answer may stand. Excepted to.)"

Clearly, this was not a refusal to allow the treatment to be shown, and the only reason for not having more from this witness is that, after the court had ruled that the witness might speak to the treatment, the defendants failed to follow up the matter.

### 1-g

The defendant Mrs. Robt. Owen was asked whether there had been any need of the son's making application for charity because of her refusal to assist the son to all the necessities of life. Objection that this was incompetent, irrelevant, and immaterial, and called for the conclusion of the witness, was sustained. We hold that the question called for a nonpermissible conclusion, and was an attempt to usurp the province of the jury.

5. EVIDENCE: conclusion: needs of pauper.

### 1-h

Mrs. Owen, the defendant, was asked, "Has there been

any need of George making application to Polk County or any charity organization for any help, aid, or relief because of your refusal to assist him to all the necessaries of life?" Among others, objection was made that this called for a conclusion of the witness. The objection was sustained, and we think rightly.

### 1-i

The witness Shirley was asked whether, if she had known that George had this vested one-seventh interest in the land, she would have expended the money of the county in helping pay his rent. Answer was excluded, on the objection, among others, that it was incompetent, irrelevant, and immaterial. It was sustained, and we think rightly so. It is wholly immaterial in this suit, whatever it might be if the suit had been one to recover for advances made. In this suit, if it was necessary to give this help, it tends to prove that the son is indigent. And the opinion of the witness as to whether she would have given this aid if she had known that the claimed pauper owned certain property does not change the fact that the demanding and giving such assistance was some evidence of indigency.

6. EVIDENCE: immateriality: what one might have done.

### 1-j

Witnesses testified to the effect that the son George had falsely accused his mother of having been the cause of the death of a son. One of these witnesses was then asked, "Was your mother the cause of Robert Owen's death?" To this, objection was sustained that it was incompetent, irrelevant, and immaterial, and called for an opinion and conclusion of the witness. We think the objection that this is a nonpermissible conclusion is well taken. And this testimony is immaterial, for reasons stated in another connection.

7. EVIDENCE: conclusion: cause of death.

### 1-k

We hold there was no error in refusing to let this witness say whether the parents were kind and gentle with the son George. While it calls for a conclusion which may be admissible of necessity, we think it immaterial for said reasons stated in another connection. So of testimony by a medical man, tending to show that the place in which the parents kept the son and his family was a sanitary one. The conclusion sought for was permissible of necessity, but we hold it to deal with immaterial matter, on account of said reasons stated in another connection.

8. EVIDENCE: conclusion: allowable conclusion.

### 1-l

The refusal to let this medical man say that the space allotted the family in the home of the parents furnished sufficient rooms was rightly excluded. The matter inquired into involved no question upon which a physician was peculiarly competent to speak, and, for reasons stated elsewhere, the matter inquired into was immaterial.

### 1-m

We hold, also, that, for said reasons, it was harmless error to exclude testimony tending to show that, while the son lived at home, he was profane.

II. The same witness said that a certain committee of ladies called on the trustee, and arranged that she furnish the Owens groceries. He added the express statement that this was not hearsay; that he knew it. He was then asked whether he was present, and answered: "I wasn't, but the trustee told me." Thereupon, defendant moved to strike this answer as hearsay. The court overruled the motion, with the statement: "I think you asked him for it." We find nothing in the record to sustain the statement that this hearsay testimony was obtained by any question asked by the defendants. The answer was manifestly hearsay, and the motion should have been sustained.

2-a

Bowers testified that he was president of an organization called the Kirkwood School Fathers' Club, in 1915; that the president of the Mother's Club reported this case to him; that they called on the alleged pau-

9. PAUPERS: indigency: evidence.

pers at Twenty-ninth Street; that, after consultation with the president of the Mother's Club, "we decided" the matter should be brought to the attention of the county. Here, defendant moved to strike the answer for being immaterial, incompetent, irrelevant, hearsay, and having no bearing on the "question." This was overruled, under due exception. We think it should have been sustained. It is, in a large sense, hearsay. It is certainly the statement of a conclusion, in effect, that the consultants were of opinion the son had a case entitling him to aid from the county.

III. We have read the evidence with much care, and are constrained to disagree to the claim of the appellants that there was no evidence upon which the jury could find that the son was physically unable to support himself and his family. Indeed, we are of opinion the evidence quite strongly tends to prove such disability. No doubt, it is a fair jury argument that even a one-legged man could find things to do that would support him. It is not impossible that the son was able to support himself and his family; but it cannot be said it is demonstrated, as matter of law, that he had such ability. And we find nothing in Code Section 2216 which holds that, if the alleged pauper can do many kinds of work, and if his wife can earn money, then the relatives may not be compelled to give support. That section does nothing but to name the relatives who are liable to maintain the alleged "poor person."

IV. As to ability of the defendants to comply with the order made, we think that, too, was a question for the jury, and that its finding of ability to pay has sufficiently

substantial support against appellate re-

10. PAUPERS: parents' ability to contribute: sufficiency of evidence.

view. As to the mother, it cannot seriously be claimed that the jury utterly was unwarranted in finding that, by the aid of her husband, she was able to pay $20 a month for the support of her son and his family. The mother has enough property so that her annual tax bill is $400. To be sure, she is 58 years old, and not in very good health; and it appears fairly that her income has, if anything, in recent years run somewhat below her outgo. But in this is involved large expenditures made for this very son, which are not now being made, and from which the order of the court appealed from will relieve the parents. We might not have interfered, had the jury found the parents did not have the financial ability to meet this order of court. But, on appellate review of a verdict, the evidence is abundantly sufficient to sustain a finding that there was ability to make such payment.

As to the husband, the evidence of financial ability is more slight. So far as actual ownership of property is concerned, he has none, unless the ownership of a Maxwell automobile, upon which the entire purchase price is owing, be considered. True, he is 65, and not in the best of health. But it also appears that he has the ability to earn money, and has been earning it. He has been able to contribute $1,000 to improve the property of his wife. On the whole, we conclude that we cannot interfere with the finding that the parents are financially able to carry out the order and judgment of the trial court.

V. The defendants assign that the court erred in overruling their motion for directed verdict, ground by ground.

The motion was not renewed at the close of all the

testimony. It is true that, in the third division of the motion for new trial, it is urged it was error to overrule the motion to direct verdict, made at the conclusion of the testimony on part of the plaintiff, and that error is assigned on the overruling of this part of the motion. But we have settled repeatedly that such repetition does not save the situation, where defendant puts in evidence after the motion to direct is overruled, and does not renew the motion at the close of all the testimony.

11. APPEAL AND ERROR: reservation of grounds: motion for directed verdict.

VI. Instruction 2 sets forth what it is that the plaintiff has the burden of establishing by a preponderance, and declares that it must so sustain each of five stated propositions. The fifth of these is that the two defendants, or either of them, are able, jointly or severally, to render relief or maintenance to said George Owen. The complaint is there is no testimony that defendant Robert A. Owen owned any kind of property; that there is no testimony tending to show his ability to provide for the son, and therefore, an entire absence of testimony justifying a verdict against him. We shall here give no consideration to the consequences that ordinarily attach to charging a jury that a party may recover if he prove each of several propositions, where there is no evidence as to one of these propositions. This assignment must be disposed of against the appellants, because the instruction was not duly excepted to. The only objection to it is in the motion for new trial, wherein it is urged that there was no evidence tending to show Robert A. Owen had such ability. But the motion does not as much as claim that, when the instruction was given, defendant did not know, or overlooked, that such objection to it existed. The appellant proceeds on the theory that the naked making of an ob-

12. TRIAL: instructions: objections and exceptions: insufficiency.

jection for the first time in the motion for new trial is a
sufficient exception. Under the statute controlling this
trial, it is not such exception.

As to objection made to parts of Instruction 3, the
brief expressly says that the exception thereto is preserved
in defendant's motion for a new trial. This point is in the
same case as the objections to Instruction 2. There was no
due exception to the charge.

Counsel for appellee urges there were waivers by fail-
ure to discuss brief points in the extended argument. Such
failure is not a waiver. The argument *in extenso* is purely
optional. *Powers v. Iowa Glue Co*, 183
Iowa 1082.

**13. TRIAL: argu-
ment and
conduct of
counsel: fail-
ure to discuss
brief points.**

### 6-a

In Instruction 9, the jury was told that,
under the law applicable, their only duty
was to pass on the question of the obligation of the defend-
ants, the ability of the defendants, to ren-
der support to their son, and the question
of whether said son is a poor person, "with-
in the meaning of the statute, who is unable
to maintain himself." The instruction con-
cluded with the statement that the jury

**14. TRIAL: in-
structions: ob-
jections and
exceptions:
failure to re-
quest fuller
instructions.**

would observe from this charge that the question of the
amount, kind, and manner of support was for the court,
after verdict had been returned. There are many com-
plaints to the effect that this instruction erred in thus
omitting to state many matters that were for the consid-
eration of the jury. This, on the whole record, amounts to
an assertion that the instruction should have been more
full than it was. The only place where such a complaint
is material is on whatsoever assignments there are on re-
fusals to give instructions requested. In other words, mere
paucity cannot be complained of on appeal, unless fuller
instructions were asked and refused.

### 6-b

This disposes of the further claim that the court erred in failing to instruct that plaintiff had the burden of showing that the interest owned by the alleged pauper in certain lands was insufficient for this support. Unless there was some error in refusing an instruction on this head, the charge of the court, which put the burden on the plaintiffs to show that the son was a poor person, within the meaning of the statutes, covers the point sufficiently against attack on appeal. And all matters involved in these complaints will have attention in dealing with assignments upon refusal to charge.

VII. The court refused to give an instruction to the effect that, unless it appear by a preponderance that the defendants have money or property subject to their use and available for such purpose, the verdict should be for the defendants. We have doubt whether the court should have charged that the defendants were not liable, merely because they had not money "available" for the purpose of supporting their indigent son. But be that as it may, the same thought was covered by the instructions which the court did give; for Instruction 2 charges that there can be no recovery unless it be shown by a preponderance that the defendants, or either of them, are able jointly or severally to render relief or maintenance to said son.

15. TRIAL: requested instructions: refused instructions otherwise covered.

VIII. In an instruction requested by the defendants, the court was asked to charge that, unless it shall appear by a preponderance that the alleged pauper and his wife are physically incapacitated to earn their own living and support, and to support themselves by their own physical efforts and exertions, they are not poor persons, within the meaning of the laws of the state. A fair con-

16. TRIAL: instructions: applicability.

struction of this offer is that the parents should not be held liable if the wife of their son was able to support herself and her husband by physical effort. If it were necessary to pass upon the point, we would gravely doubt whether the ability of a wife to support a husband who is indigent will relieve the parents of the indigent. This suit is strictly under statute. That statute expressly declares upon whom the duty to support falls, and the wife is not included in the persons enumerated. But we are not called upon to pass on this point, because the plaintiff, by its petition and throughout the trial, proceeded on the theory that it was for the plaintiff to show the inability of the wife, before it could hold the parents liable; and we must deal with the case on that theory. On such theory, it was error not to give this instruction. Where it is conceded that there is no liability if the wife is able to support the husband, certainly the jury should be called upon to say whether the wife had the ability to give such support. But we think that Instruction 8 sufficiently submits the ability of the wife. The instruction is almost in the exact words of the allegation of the petition which injected the earning capacity of the wife.

IX. The parents contend it is a material issue whether or not they abandoned their son, and whether they treated him and his family with such kindness as to conclusively refute any idea that they abandoned the son or his family. They insist the court erred in making a finding that there had been an abandonment; that this was error, first, because, in so doing, the court invaded the province of the jury, and second, because such finding is contrary to conclusive evidence. To begin with, we are unable to find anything in the record which shows that the court made any such finding. The only findings on part of the court are that the son is a poor person, unable, because

17. PAUPERS: public support: abandonment by parents.

of mental or physical infirmity, to maintain himself by labor, and that the defendants are financially able to relieve and maintain him. This is no finding that there was an abandonment. At any rate, there was no invasion of the province of the jury, because all the findings by the court are merely a recital of what was found by the verdict of the jury.

What is more, the question of abandonment is not in this case. It is true, Section 2221 of the Code of 1897 provides that, on demand, there shall be a jury trial, and that the jury shall determine the questions of obligation and ability to render support, the liability of the person abandoned to become a public charge, and "the alleged abandonment." But, on reference to Code Section 2220, it will be found that abandonment is the basis for nothing but suits brought to seize property of the relatives of the alleged poor person. The suit at bar is one brought purely to obtain some order compelling the parents to furnish support to the son. It is brought under Code Section 2219, and in such suit, abandonment is an issue for neither court nor jury.

### 9-a

The jury could well have found that the treatment of this son, while in the home of his parents, was of the gentlest, and that he was dealt with as generously as the means of his parents permitted. For instance, it is undisputed that they let him have money which was saved up to pay their taxes. It can fairly be said that the son so misconducted himself that his presence in the home of his parents became well nigh intolerable. It is practically undisputed that he cursed his mother, and other members of the family. Against much positive evidence that he did this, he had nothing to say, except that he did not know whether he cursed them or not; that he didn't know what he said. He seems on the trial to have testified falsely that

his mother was profane. It could fairly be found he false-
ly accused his mother of having contributed to the death
of one of her sons. It is undisputed that he and his wife
threw slops through the upstairs back door, and that he
so used the windows for cuspidors as that the practice was
a nuisance. He kept an infected and evil-smelling dog in
the house. It could fairly have been found that he left the
home of his parents of his own volition, and without just
cause, and that he left to carry out a conspiracy to obtain
a livelihood by begging, and falsely pretending to be a
pauper. We may assume the parents have at all times been
willing and able, and are so now, to give this son and his
family proper support in the home of the parents if the
son will refrain from such misconduct.

If all this be assumed, how is that material as be-
tween the parents and the public? If he engaged in such
conspiracy, but was indigent at the times in question, such
conduct on his part cannot relieve the parents, as against
the public, from supporting the son. That he engaged in
such a conspiracy is as good a reason for denying relief by
the public as for denying him relief from father and mother.
How can that be material, as between the parents and the
public? If the son be indigent, is a public charge, or about
to become one, someone must furnish him help, no matter
how bad a son he has been and is, and no matter how im-
possible he has made it for his parents to maintain him in
their home. He may not be allowed to starve in the streets,
even if his condition is due to his own misconduct, and
though his own contumacy alone stands in the way of his
being fully relieved by his parents. The question finally
becomes one of paymaster. Who shall maintain this indi-
gent bad son,—the parents or the general public? How
can the fact that the parents are not guilty of abandonment
put a burden upon the public which the statute puts upon
the parents, no matter what sort of son it is that they have?

As said in *State v. Osawkee Twp.*, 14 Kan. 418, at 422, "It matters not through what the inability arises * * * it is enough that it exists." We conclude that all the assignments touching the treatment of the question of abandonment are not well taken; that whether the parents have or have not abandoned the son is wholly immaterial, if a point has been reached where the question becomes whether the public or parents, who are able to do so, shall support this son.

X. It appears without dispute that the son had an eighth interest in lands, subject to a life estate, and that such interest is worth about $6,600. The defendants asked the court to charge that, therefore, "the burden is upon the plaintiff to show that the interest of the said George Owen in the said real estate is of adequate value for the support and maintenance of the said George Owen, and unless you find, upon the preponderance of the testimony, that the interest in the said real estate owned by the said George Owen is inadequate for his support and maintenance, the said George Owen is not a poor person, within the meaning of the laws of the state of Iowa, and your verdict should be in favor of the defendants."

18. TRIAL: requested instructions: invited error.

Instruction 6, which the court did give, tells the jury that George did own said interest in said real estate, and then instructs almost in the very words of the offered instruction, to wit:

"In this connection, you are instructed that the burden is upon the plaintiff in this case to show that the interest of the said George Owen in said real estate is not adequate for the support and maintenance of the said George Owen; and unless you find, by a preponderance of the evidence, that the interest owned by the said George Owen in said real estate is inadequate for his support and maintenance, then the said George Owen is not a poor per-

son, within the meaning of the laws of Iowa, and your ver-
dict should be in favor of the defendant."

It is now insisted that, the ownership of this land
being conceded, and it being undisputed that such owner-
ship was of large and substantial value, and could be sold
or mortgaged, that, under the law, and as matter of law,
the alleged pauper was not a poor person, within the mean-
ing of the statutes, and that no relief could be obtained
from the parents until the said property was exhausted in
the support of the alleged pauper and his family. The
trouble is that, voluntarily, without any action by the
court indicating what its attitude on that point would be,
the defendants themselves asked the court to treat the
question of the adequacy of this property and its effect upon
preventing the owner from being a poor person as a ques-
tion of fact, to be submitted to the jury. In such circum-
stances, the appellant is estopped to say, on appeal, that
the court should have treated as matter of law what the
appellant told the court was a question of fact.

XI. Now, while appellants have waived the right to
urge that the indigence of the son should not have been
submitted at all, they have not waived the right to present,
as they do, that the court erred in over-
ruling that ground of the motion for new
trial which asserts that the verdict is not
supported by the evidence. On such mo-
tion, the court was not concluded by the
fact that the jury had found the son to be a poor person,
within the meaning of the statute, in disregard of the fact
that it appeared without dispute he owned an interest
worth $6,600 in Iowa lands. If being the possessor of such
interest effects that he is not such poor person, the verdict
should have been set aside, for being against the evidence.
Or at any rate, the plea in abatement interposed should
have been sustained, and the question of compelling the

19. APPEAL AND
ERROR: reser-
vation of
grounds: mo-
tion for new
trial.

parents to make a money provision postponed, until said property had been exhausted in support of the son and his family. The question remains whether the ownership of said interest in lands effects that the owner is not such "poor person."

Even where the alleged pauper is possessed of some property, it will ordinarily be a question for the jury whether, despite such ownership, he is such "poor person." *Hardin County v. Wright County*, 67 Iowa 127; *Jasper County v. Osborn*, 59 Iowa 208. But, ordinarily, very many things are questions of fact for a jury; and yet the evidence may be in such state as that a jury could not be sustained in deciding that question of fact in a given way. It is all a question of degree of proof.

20. PAUPERS: indigency: jury question.

The word "poor," in such statutes as base the suit at bar, has a restricted and technical meaning; and it is practically synonymous with "destitute," denoting extreme want and helplessness. *Town of Rhine v. Sheboygan*, 82 Wis. 352 (52 N. W. 444); *State v. Osawkee Twp.*, 14 Kan. 418, at 422; Anderson's Law Dictionary, Title "Poor." In law, the term denotes persons "who are entirely destitute and helpless and dependent upon public charity * * * so completely destitute of property as to be entitled to maintenance from the public * * *. It is not one who is in want merely, but one who, being in want, is unable to prevent or remove such want." Judge Brewer, in *State v. Osawkee Twp.*, 14 Kan 418, at 422. These do not wholly control us; for in this state we have a statute definition. It is found in Section 2252 of the Code of 1897, which provides that the words "poor" and "poor persons," as used in the statutes for the relief of the poor, shall be construed to mean "those who have no property, exempt or otherwise,

21. PAUPERS: poor person: definition.

22. PAUPERS: indigency: evidence.

and are unable, because of physical or mental disabilities to earn a living by labor; but this section shall not be construed to forbid aid to needy persons who have some means, when the board shall be of opinion that the same will be conducive to their welfare and the best interest of the public." But even under this statute, it has been held that the test under it is whether one be "without property which can aid in his support, or out of which funds may be realized for his maintenance." *Hamilton County v. Hollis,* 141 Iowa 477, at 481. The law on the subject should not be dealt with unreasonably, or with undue rigidity. One who owns a good house and lot in a city cannot be entitled to claim provisions made for paupers. On the other hand, the owner of a miserable hovel, which he uses as a shelter for his family, must not be compelled to sell it if it be of any value whatsoever, before he may rightfully call upon the public authorities to furnish medicine and bread for his sick and famishing children. *Wallingford v. Southington,* 16 Conn. 431, at 435, 436.

The test is whether the alleged pauper owns an estate of some substantial value, which, in reason, can be appropriated, and made to contribute to his support (*Wallingford v. Southington,* 16 Conn. 431, 435, 436); and that is the substance of the holding in *Hamilton County v. Hollis,* 141 Iowa 477, at 481.

The practical difficulty in determining whether a verdict which finds indigence should be set aside is not in ascertaining rules, but in settling how conclusively the evidence shows that the alleged pauper is not a pauper.

Some of the cases are exceedingly strict in finding that the alleged pauper was not entitled to relief under such statutes as ours. In *Peters v. Town of Litchfield,* 34 Conn. 264, it was held that one who has a life interest which is not sufficient for his support, and is unable to make up the deficiency by his own labor, is, nevertheless, not entitled

to support as a pauper, so long as the property remains un-
expended. In *Stewart v. Sherman,* 4 Conn. 553, at 556, the
alleged pauper was the owner of a good promissory note
in the sum of $96, and it was held that, until this resource
was exhausted, he could not be considered a pauper. By
way of argument, it is said that, where one retains land,
he must support himself on his personal credit, and not
that of the town. In *Town of Rhine v. Sheboygan,* 82 Wis.
352 (52 N. W. 444), the person held not to be a poor per-
son, within the meaning of the statutes, was the head of a
family, who owned three acres of land, on which was a
house, having a dance hall connected, and which this per-
son valued at $1,200, and which was incumbered for $450.
It was said that the alleged pauper did not have that status
until these resources had been exhausted.

Our own cases give some light, by finding, in fairly
extreme cases, that indigency remained a question of fact.
We held, in *Hamilton County v. Hollis,* 141 Iowa 477, at
481, that the question of indigence was for the jury. But
there, the alleged pauper owned nothing but the right to
the use of a very small house, out of repair, and situated
in a very small village. It is manifest the mere ownership
of such right of use would have no effect in saving the own-
er from starvation. We reversed in *Hardin County v.*
*Wright County,* 67 Iowa 127, because the trial court denied
all relief merely because the alleged pauper had no previous
pauper record, and owned "some" property, which consisted
of $1,000 worth, "somewhere in the world," the question of
indigence having been tried out in a place remote from such
property, and among strangers, it being, moreover, strong-
ly intimated that the alleged pauper was disqualified to do
the business of disposing of that property. In *Jasper Coun-
ty v. Osborn,* 59 Iowa 208, we held pauperism to be a ques-
tion of fact, where the alleged pauper had a homestead right
in 40 acres of some sort, not definitely described or valued,

and owned some personal property kept on this land.

But while all this is sound, it hardly warrants a finding that one who owns an undivided one-eighth interest in Iowa farm lands, worth $6,600, free from all incumbrance save the life estate of a woman 58 years old, and in bad health, and who has made practically no effort to borrow or to sell such interest, is destitute, helpless, and a pauper, within the meaning of the laws for the relief of the poor. To hold he is that is shocking to all reason. This "pauper" is worth more money than the majority. Thousands upon thousands who own much less than that would resent being termed a pauper.

We do not mean to hold there might not be cases in, which, in the exercise of sound and honest discretion, it would be permitted to give temporary aid to one who had even such property as this alleged pauper had. One might, while among strangers, be so overtaken by temporary distress as that the ownership of a valuable interest in land would not be available to relieve that emergency; and the cases that most strictly construe the word "poor" permit such relief, on emergency. *Town of Rhine v. Sheboygan*, 82 Wis. 352 (52 N. W. 444) ; *Stewart v. Sherman*, 4 Conn. 553, at 556; *Wallingford v. Southington*, 16 Conn. 431, at 435, 436. As said in *Town of Rhine v. Sheboygan*:

"Doubtless, cases of distress may exist, urgently requiring aid before the parties can resort to or utilize their limited resources not in and of themselves affording credit for immediate relief and pressing want. The spirit of the law, in such exceptional cases, might, perhaps, justify the extension of aid under the statute."

And we said in *Hardin County v. Wright County*, 67 Iowa 127, that there might be an emergency requiring prompt action, without time to make an extensive examination of the applicant's circumstances. The same thought is found in that part of Section 2252, Code, 1897, which

permits needy persons to be relieved even if they have some means, if the authorities are of opinion that extending such relief will be conducive to the person's welfare, and to the best interests of the public. But the evidence wholly fails to show any such situation. We are not called upon to say what our view would be if the alleged pauper in this case had, in an emergency, been furnished aid as a poor person, under the statute, and a demand for repayment were being resisted with the defense that no repayment was due, because the owner of such property as this was not, under the statute, entitled to such aid. In fact, we may say that such defense would not be tenable on part of the alleged poor person, for the self-evident reason that whatsoever was the nature of his property, he would be estopped to urge, against one who had furnished him support, that there could be no recovery because he was, owing to the possession of such property, not a poor person. Indeed, it would be an irrelevant defense, because his property could be seized for what had been furnished him, whether he was a poor person or a rich one. What we have is not an attempt to obtain repayment for aid furnished in an emergency, but an attempt to compel the parents of George to furnish support money in future, and a judgment to that effect, operative at a time when George is the owner of an interest in Iowa land, worth $6,600. If the support money to be paid in future can wait until a lawsuit is finally determined, it can also wait until adequate attempts are made to exhaust this property in support of the alleged pauper. If there is no emergency that must be met before such a lawsuit as this is tried out, it is not a grave enough emergency to demand contribution by others before this property is exhausted, or attempts are made to exhaust it.

In our opinion, the trial court should either have set aside the verdict for being against the evidence, or have

sustained the plea in abatement, and deferred the question of whether the parents should contribute until said property was mortgaged or sold, under direction of the court, or it became apparent that it could be neither sold nor mortgaged.

XII. The statutes upon which the suit at bar is based are said to be violative of the fundamental law. The courts are reluctant to sit in review upon the acts of a co-ordinate department of the government. They decline to pass upon the constitutionality of statutes unless whether there shall be an affirmance or a reversal depends upon whether such statutes are or are not valid. This, of course, is not the situation here, and we express no opinion upon the constitutional question urged.—*Reversed.*

23. CONSTITUTIONAL LAW: principles of construction: moot questions.

LADD, C. J., EVANS and PRESTON, JJ., concur.