S. R. E. ANDERSON, Administrator, Appellant, v. FORT DODGE, DES MOINES & SOUTHERN RAILROAD COMPANY et al., Appellees.

No. 39546.

JUNE 24, 1929.

*Maurice J. Breen* and *D. M. Kelleher*, for appellant.

*Dyer, Jordan & Dyer*, for Fort Dodge, Des Moines & Southern Railroad Company, appellee.

*Price & Burnquist*, for Fort Dodge Creamery Company, appellee.

WAGNER, J.—Raymond Anderson, 18 years of age, a clerk in the Boyd Drug Store at Gowrie, met his death on the 19th day of August, 1925, by reason of an electric shock. For some years prior to the date of the death of the boy, the Fort Dodge, Des Moines & Southern Railroad Company had been supplying the electrical power to Gowrie for lighting and power purposes from its power house at Fraser, over a three-phase, 22,000-volt circuit. In about the central portion of the town of Gowrie is a transformer, the purpose of which is to reduce the voltage coming in on the main transmission line from 22,000 volts to 2,300 volts. This latter voltage is communicated by primary wires around the town. There are used secondary transformers, the purpose of which is to reduce the voltage from 2,300 to normal voltage used by consumers of 110-220. At the time of the accident, the drug

store was supplied by electrical energy from a transformer located not far distant therefrom. The wiring within the building was such as is ordinarily used for lights and power for motor purposes.

In April, 1925, the Fort Dodge Creamery Company installed within the building a frigidaire, the ownership of which it retained, and received from Boyd a monthly rental for its use. The cabinet was placed near the fountain in the front part of the store, and the compressor unit was placed in a near-by closet in the southwest corner of the building. The wiring for the installing of the frigidaire was done by the latter company, by connecting onto the wires which had been previously attached to the ceiling. There was nothing out of the ordinary in this wiring that was done for the installing of the frigidaire. Along the east wall of the closet there was installed a knife switch, which, when drawn, disconnected the motor from the source of current supply. Above this switch there was attached a drop cord, at the loose end of which there was the usual appliance for the attachment of an electric light bulb for lighting purposes, and a bulb was attached. This closet was under the stairway, and had no openings except the door leading from the drug store. There was located in the closet a carbonator, which constituted no part of the frigidaire. The closet was also used as a storage place for cigars. It had a wooden floor, and had been covered with tar paper, which was worn out in places. The floor was quite damp or wet, caused by leakage from the tank of the carbonator therein. As hereinbefore stated, the carbonator was no part of the frigidaire which was installed, but was used by the proprietor and his employees for charging soda fountain drinks.

At the time of the boy's death, which was shortly after noon, there was no one in the store except himself and the witness Greenlee. The latter ordered a malted milk, which was mixed by the electric mixer. He was sitting at a table when the boy entered the closet, turned on the light, and in some way not disclosed by the record, let the drop cord fall, and broke the bulb upon the floor. He came to another portion of the store, procured another bulb,—apparently for the purpose of attaching it to the drop cord,—again entered the closet, with the door open, and almost immediately called to Greenlee to shut off the juice; that he was getting a shock. Greenlee rushed to his assistance,

and found him lying on the floor, face downward, with the cord along his body, and, not knowing that the light was attached above the knife switch, pulled the same. He then grabbed hold of Raymond around the chest, and as the result thereof, received a shock. He then grabbed the insulated cord and tore it from its attachment, and just about that time, the boy exclaimed: "My God, Rus, I am dying!" Greenlee then carried him into the drug store, and as the witness expresses it: "He was just gasping for breath; you might call it a death gurgle." An electric fan was used, and other efforts made to resuscitate him, but without avail. There was a slight scar or burn in the palm of his hand.

The light in the back room of the drug store was burning all of the time. In the next building east is a printing office, which received its power from the same circuit; and at the time of the accident, there was in operation therein a linotype machine, operated by the usual voltage of 220, and nothing unusual in connection with said machine was observed. In the adjoining building to the west was a bank, which received its power from the same circuit, and which, when necessary, used two adding machines, an electric fan, and lights; and no trouble with the electrical equipment at any time during the afternoon was observed. There was no disturbance in the meter, the fuse, the lights, the electric milk shaker, or the motor of the frigidaire in the building in question. There is no question that the boy died as the result of an electric shock. There is a variance in the expert testimony as to whether his death was the result of low voltage or high voltage. The foregoing are the more salient facts relative to the death of the boy.

At the close of the plaintiff's evidence, the court directed a verdict in favor of the Fort Dodge Creamery Company. There is no evidence in the record that the method of installation of the  frigidaire used by the Creamery Company was not the method usually and ordinarily used for such purpose; no evidence of any defect as to the wiring within the building or in connection with the frigidaire. Relative to the drop cord, Boyd testifies that it was installed by said defendant; but the plaintiff called as a witness said defendant's employee who did the installing, and his testimony was to the effect that the company had nothing

to do with the installation of the drop cord. It is apparent that the drop cord is no part of the system required for the operation of the frigidaire. It is also apparent that a light in the closet would be convenient for the use of those in charge of the store at times when the current was disconnected from the frigidaire. This is probably the reason why the connection of the drop cord was placed above the switch by whomsoever it was attached. There is no evidence by which it could be found that an ordinarily careful and prudent person would have acted differently in this respect. Moreover, it cannot be successfully asserted that the failure of the switch to disconnect the current from the drop cord was the proximate cause of the boy's death. There is no causal connection between the two facts. To say that the latter was the result of the former is mere speculation and conjecture. See *O'Connor v. Chicago, R. I. & P. R. Co.*, 129 Iowa 636; *Rhines v. Chicago & N. W. R. Co.*, 75 Iowa 597; *Wheelan v. Chicago, M. & St. P. R. Co.*, 85 Iowa 167; *Asbach v. Chicago, B. & Q. R. Co.*, 74 Iowa 248. No act of either commission or omission of said company can be successfully asserted as the proximate cause of the boy's death. The record is barren of any evidence of negligence on the part of said defendant, if it be conceded, *arguendo,* that it attached the drop cord. The action of the trial court in directing a verdict for said defendant was clearly right.

The appellant's assignments of error relative to the trial as against the Fort Dodge, Des Moines & Southern Railroad Company relate to the withdrawal from the jury of certain pleaded allegations of negligence, alleged errors in the court's instructions, and claimed erroneous rulings of the court on the introduction of testimony.

The plaintiff, in his petition, alleges against said defendant thirteen grounds of negligence, three of which we will set out in full, as follows:

"* * * (3) That it was negligence to permit an electric current of a dangerous, deadly, and excessive voltage to pass into the building of the said Boyd Pharmacy. * * *

"(6) That no proper ground connection of said system was constructed or maintained, and no ground connection was made at or near either of said transformers. * * *

"(9) That the wiring, construction, and maintenance of

the transformer bank approximately a block north of the Boyd Pharmacy on which the secondary wires leading to the Boyd Pharmacy were connected with said transformer bank was defective, in that the secondary wires and primary wires carrying a high and dangerous voltage were in such a position and state of lack of repair that a slight wind, or other atmospheric disturbance, would cause contact between the primary and secondary wires, and at said transformer bank loose ends of wires were permitted to swing unattached, whereby the primary current in excess of 2,000 volts could be transmitted to the secondary wiring system entering the Boyd Pharmacy. * * *''

It is not claimed by the appellant that any of the remaining grounds of pleaded negligence should have been submitted.

There is evidence to the effect that the usual and ordinary practice is to put a ''ground'' either at the transformer or at the particular service, neither of which was done. There is also evidence from which the jury could have found that  there was a loose end of wire on one of the poles, to which were attached wires carrying both primary and secondary current, which loose end of wire was of sufficient length that, if it came in contact with the wiring carrying the secondary current, it might have produced an excessive voltage in the latter leading into the building. Although the jury could have found the foregoing facts established by the evidence, yet that is not sufficient to entitle the plaintiff to recover in this action on the alleged specific grounds of negligence. It is incumbent upon the plaintiff to prove that the alleged negligence is the proximate cause of the death. It is a matter seriously disputed as to whether there was an excessive current in the building at the time in question; that question was for the jury; but when the plaintiff relies upon a specific ground of negligence, it must be established, either by direct or circumstantial evidence, that the specific ground of negligence is the proximate cause of the injury. There is no evidence that, at the time in question, the loose end of wire heretofore mentioned connected the primary and secondary wires. The most that the evidence shows is that it might have done so. Without such connection, which the evidence fails to show, any excessive voltage in the building could not be attributed to said

cause. The evidence also fails to show lack of proper working on the part of the transformer, or that the cause of any excessive voltage in the building was due to lack of "grounding." If there was an excessive voltage in the building, it got there in some manner, but how, is not shown by the evidence. Before any specific ground of negligence can be found to be the proximate cause, it must be shown that because thereof an excessive voltage appeared in the building. The evidence as to the proximate cause, in so far as the pleaded specific grounds of negligence are concerned, is a mere matter of theory, surmise, suspicion, speculation, and conjecture, and under the authorities hereinbefore cited, is insufficient to warrant the court to permit a jury to find that the same is the proximate cause of the injury.

We find no error because of the withdrawal from the jury of the specific grounds of negligence. Moreover, no prejudice resulted to the appellant because thereof, for the court submitted the case to the jury under the "*res ipsa loqui-tur*" rule. It is apparent that, if the plaintiff made out a case at all, he made it under the doctrine of "*res ipsa loquitur.*" The case was tried in the lower court prior to our pronouncements in *Whitmore v. Herrick*, 205 Iowa 621, and *Orr v. Des Moines Elec. L. Co.*, 207 Iowa 1149. It was tried upon the theory that the "*res ipsa loquitur*" doctrine was applicable to the facts in the case. The petition alleges the aforesaid general averment of negligence and also specific grounds of negligence, all in one count. In the *Herrick* case, we declared that, if specific negligence is set forth in a given count, there is no place therein for general assertions of negligence. In that case there was no allegation in the particular count under discussion of either general or specific negligence. In the *Orr* case, we held that there was no general allegation of negligence, but only allegations of specific negligence set out in the petition; and on the defendant's appeal, we held that, because thereof, the "*res ipsa loquitur*" rule could not be invoked to aid the plaintiff in making out his case. In the instant case, the defendant, by motion, invited and requested the court to submit the case to the jury only on Ground 3, the general allegation of negligence hereinbefore quoted.

It is true that, at the close of plaintiff's evidence, the defendant moved for a directed verdict for the following reasons:

"(1) That the plaintiff has failed to sustain the allegations of negligence set out in his petition.

"(2) There is no evidence of any negligence on the part of the defendant company which was the direct and proximate cause of the plaintiff's damage.

"(3) The evidence fails to show that the defendant was guilty of any negligence which caused any high or excessive voltage to enter upon the secondary system in the Boyd Pharmacy, which was the cause of plaintiff's decedent's death.

"(4) That, if the evidence shows that plaintiff's decedent came to his death by reason of an electrical shock, the evidence fails to show that it was due to an excessive, unusual, or abnormal voltage.

"(5) The evidence conclusively shows that the voltage passing into the Boyd Pharmacy, and upon the wire that decedent had in his hand at the time of his death, was but the usual and ordinary voltage.

"(6) The evidence fails to show that plaintiff's decedent was free from contributory negligence.

"(7) The evidence fails to show that, if the decedent came to his death as alleged in the petition, it was through no voluntary act of his."

It is also true that, at the close of the evidence, the defendant renewed the motion for a directed verdict, and same was overruled. Subject to the motion for a directed verdict, the defendant moved for a withdrawal from the consideration of the jury of each allegation of negligence except Number 3, the general ground of negligence hereinbefore quoted. In ruling upon this latter motion, the court said:

"I will make this ruling: That defendant's motion to strike will be sustained, and the only specification of negligence which will be submitted to the jury will be that contained in Paragraph 3, or Ground 3, on page 7 of the petition, 'that defendant was negligent in permitting an electric current of dangerous, deadly, and excessive voltage to pass into the building of the said Boyd Pharmacy.' And the court, in sustaining this motion, does not

intend to rule or hold that it is not proper for the jury to consider any of the alleged faults or defects or acts mentioned heretofore, the other specifications of negligence, in determining whether it was negligent in permitting an electric current of dangerous, deadly, and excessive voltage to pass into the building,—the court being of the opinion that the third specification covers all of the other specifications, in so far as any evidence tending to support such ground of negligence as alleged.''

The defendant is in no position to now insist that the court should not have sustained its motion for the withdrawal of all grounds of negligence except the general ground. It made the motion. It invited the action of the court in submitting the case under the *"res ipsa loquitur"* rule. Under said submission, the verdict was for the defendant. The question at this point is, Was it improper for the court, on the request of the defendant, to submit the case under the *"res ipsa loquitur"* rule? We answer in the negative. The plaintiff alleged in his petition the general averment of negligence, the defendant asked the withdrawal of all other grounds, and the court so submitted it. We therefore hold that, under the record as made upon the invitation and request of the defendant, it was not improper for the court to submit the case under the *"res ipsa loquitur"* rule. See *Burghardt v. Scioto Sign Co.*, 191 Iowa 384; *Carnego v. Crescent Coal Co.*, 163 Iowa 194; *City of Sioux City v. Chicago & N. W. R. Co.*, 129 Iowa 694; *Polk County v. Owen*, 187 Iowa 220. In the *Burghardt* case, we said:

''It is sufficient that it [a special interrogatory] was submitted at defendant's request, and such a request implies a concession of its propriety for the purposes of the case.''

In the *Carnego* case, we declared:

''It seems to be well established that, by requesting the submission of an issue, a party waives the right thereafter to insist that the evidence was insufficient for its consideration.''

In the *Sioux City* case, we made the following pronouncement:

''No one should be allowed to assume antagonistic positions in litigation with reference to the same property, or to the same

fact or state of facts, when such action will prejudice. another party to the same suit or series of suits."

It will be observed that defendant, in its motion for a directed verdict, did not base it upon the fact that the general allegation of negligence was included in the same count with specific allegations of negligence, but solely upon the insufficiency of the evidence. We therefore hold that whether there is error in the court's instructions, although nothing but the general allegation of negligence was therein submitted, is properly before us for our determination.

In the consideration of the instructions, we will consider  only the errors which are assigned, and which are included in the exceptions filed in the court below. Appellant's chief complaint is as against Instruction No. 7, wherein the court told the jury:

"In determining whether defendant was negligent as charged, and that the death of said Raymond Anderson was caused by such negligence, you are instructed that, if plaintiff has shown by a preponderance of the evidence that the death of the said Raymond Anderson was caused from an electric shock received from an electric current of an excessive and dangerous voltage that escaped or was transmitted from defendant's wires into the building in question, and has further shown that decedent was free from any negligence contributing to his said injury and death, then, under such circumstances, if unexplained, the inference would arise that the death of decedent was due to the defendant's want of care; and if no further evidence is offered tending to rebut the inference thus raised, it would be sufficient to warrant you in finding that defendant was guilty of negligence as charged, *but you are not bound to so find*.

"The inference arising under such circumstances, if shown, does not relieve the plaintiff from the burden of proving his case, *nor does it cast upon the defendant the burden of showing that it was not negligent as charged*. The weight and effect to be given to the inference arising under such circumstances, if shown, is for the jury to determine." (The italics are ours.)

The court further told the jury in said instruction that, if

the defendant would overcome or rebut the inference arising under such circumstances, if shown, it might do so by evidence tending to show that, in the use and distribution of its electric current and the keeping and maintaining of its electrical equipment, it exercised due and reasonable care and caution in the respect with which it was charged with negligence, and that, if it had done so, and the evidence so offered by it was sufficient to meet or rebut the inference of negligence arising from the circumstances shown, if any were shown,—that is, if the effect of the defendant's rebutting evidence, if any, was to produce an equipoise or balance in the evidence, so that, upon consideration of all the evidence in the case, including the inference of negligence arising, as therein explained, if it did so arise, they could not say the evidence preponderated in favor of the plaintiff,—then he had not proven his case by a preponderance of the evidence, and would not be entitled to a verdict. The substance of this instruction was approved by us in *Duncan v. Fort Dodge Gas & Elec. Co.,* 193 Iowa 1127. Appellant's complaint as against said instruction is the use of the words therein *"but you are not bound to so find,"* and *"nor does it cast on the defendant the burden of showing it was not negligent, as charged."* We find no merit in this complaint.

In 45 Corpus Juris 1223, the general rule as to this matter is announced as follows:

"* * * the general rule is that the doctrine [res ipsa loquitur] may never become the ground of a directed verdict for plaintiff, but that the weight of the inference, as well as the weight of the explanation, is for the determination of the jury. Furthermore, in accordance with the general rules pertaining to the province of the court and jury on the issue of negligence, the application of the doctrine does not require or compel the jury to draw the inference of negligence, but merely warrants or permits such an inference, which the jury may or may not, in its discretion, draw."

Also, see *Womble v. Grocery Co.,* 135 N. C. 474 (47 S. E. 493); *Stewart v. Carpet Co.,* 138 N. C. 60 (50 S. E. 562); *Sweeney v. Erving,* 228 U. S. 233 (57 L. Ed. 815); *Sullivan v. Minneapolis St. R. Co.,* 161 Minn. 45 (200 N. W. 922); *White v. Hines,* 182 N. C. 275 (109 S. E. 31); *Riggsby v. Tritton,* 143 Va.

903 (129 S. E. 493); *St. Louis v. Bay State St. R. Co.*, 216 Mass. 255 (103 N. E. 639); *Connolly v. Des Moines Inv. Co.*, 130 Iowa 633.

In the *Womble* case, supra, the Supreme Court of North Carolina said:

"The principle of *res ipsa loquitur* in such cases carries the question of negligence to the jury, not relieving the plaintiff of the burden of proof, and not, we think, raising any presumption in his favor, but simply entitling the jury, in view of all the circumstances and conditions as shown by the plaintiff's evidence, to infer negligence, and say whether, upon all of the evidence, the plaintiff has sustained his allegation."

In the *Stewart* case, supra, the same court declared:

"Whether the defendant introduces evidence or not, the plaintiff in this case will not be entitled to a verdict unless he satisfies the jury by the preponderance of the evidence that his injuries were caused by a defect in the elevator attributable to the defendant's negligence. The law attaches no special weight, as proof, to the fact of an accident, but simply holds it to be sufficient for the consideration of the jury, even in the absence of any additional evidence."

In the *Sweeney* case, supra, the Supreme Court of the United States made the following pronouncement:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

In *Sullivan v. Minneapolis St. R. Co.*, the Supreme Court of Minnesota used the following apt language:

"Plaintiff is aggrieved because she claims the doctrine of *res ipsa loquitur* applies, and that she was entitled to have her request [a certain requested instruction] given, and that, in the absence of such instruction, this principle was not properly given to the jury. She was not entitled to have her request given. It is based upon a false hypothesis. The request is couched in such language as to indicate to the jury that the facts of the occurrence compel the inference of negligence; whereas, in law, such facts warrant or permit the inference of negligence. The jury is to determine whether, in fact, there is negligence. This request would likely be understood by the jury to mean that the inference of negligence in fact did exist; whereas the law says the jury is to decide the sufficiency of the evidence as justifying the inference of negligence. This charge [the requested instruction] says, 'the duty will devolve upon the defendant company to exonerate itself,' etc.; but the law says that such circumstances call for explanation—not necessarily that they require it. Such circumstances take the place of evidence, to make a prima-facie case to take the case to the jury; but such circumstances do not anticipate the verdict. It still remains for the jury to decide whether the preponderance is with the plaintiff, even if no explanation is given in response to the call therefor. It does not convert defendant's general issue into an affirmative defense."

In *White v. Hines,* supra, the Supreme Court of North Carolina again said:

"As applicable to this class of cases, the rule formulated by the more recent decisions of this court is substantially as follows: In all instances of this character, after the plaintiff has established a prima-facie case of negligence, if no other evidence is introduced, the jury will be fully warranted in answering the issue as to negligence in favor of the plaintiff, but will not be required to do so, as a matter of law. When such prima-facie case is made, it is incumbent upon the defendant to offer proof in rebuttal of the plaintiff's case, but not to the extent of preponderating evidence. The defendant, however, is not required, as a matter of law, to produce evidence in rebuttal; he may decline to offer evidence, at the peril of an adverse verdict. If he offer evidence, the plaintiff may introduce other evidence in reply; and the jury will finally determine whether the plaintiff is entitled

by the greater weight of all the evidence to an affirmative answer to the issue; for throughout the trial the burden is upon the plaintiff to show by the greater weight of the evidence that he is entitled to such answer."

In *Riggsby v. Tritton,* supra, the Supreme Court of Virginia uses the following language:

"The presumption itself, as we have seen, is evidential, and is a substitute for direct testimony. A stream does not rise higher than its source. The presumption can have no greater weight than the testimony for which it is a substitute. It would be manifestly improper to say to the jury, after the plaintiff had introduced a certain amount of evidence, that the burden of proof shifted to the defendant. The doctrine of *res ipsa loquitur* has nothing to do with the burden of proof at all."

In *Connolly v. Des Moines Inv. Co.,* supra, we declared:

"There is no controversy between counsel as to the rule thus announced, but the appellant contends that it shifted the burden of proof, and required the defendants to prove their freedom from negligence on the whole case. The position cannot be maintained, however. A presumption of this kind does no more than to relieve the plaintiff from going forward with his evidence of the defendant's negligence until the defendant has produced his evidence on the subject. It has the force and effect of a prima-facie case, and nothing more. If there be no evidence rebutting the presumption, it may be sufficient to sustain the party in whose favor it arises, but it does not shift the burden of proof."

Thus we find that there is no merit in the criticism of the instruction which is urged upon us by the appellant.

The appellant further complains that the court did not instruct the jury, as he claims, in accordance with Section 8323 of the Code of 1924, which provides:

"In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof."

This section is found in Chapter 383 of the Code, and by its

terms, whatever its significance, applies only to cases of injury by transmission lines outside of cities and towns. In cases heretofore coming before us where this statute was invoked, the injury arose in the open country. See *Beman v. Iowa Elec. Co.*, 205 Iowa 730; *Murphy v. Iowa Elec. Co.*, 206 Iowa 567; *Lipovac v. Iowa R. & L. Co.*, 202 Iowa 517; *Walters v. Iowa Elec. Co.*, 203 Iowa 471. In view of the fact that the statute does not apply to the instant case, we make no pronouncement as to whether the correct construction of the statute differs from the general rule as to *"res ipsa loquitur"* hereinbefore quoted from the authorities.

In view of the foregoing, there is no merit in the aforesaid complaint made by appellant against Instruction No. 7.

The court, in Instruction No. 13, told the jury that, in actions of this kind, it must be proven that the injured party, at the time of the alleged injury, was free from any negligence contributing to the injury; that the burden is upon the plaintiff in this case to prove such fact; and that, unless he has done so, no recovery can be had. It is the contention of the appellant that there were no eyewitnesses to the accident, and that, because thereof, the decedent is presumed to have been in the exercise of due care, and that the court should have so instructed. It is true that the decedent was for an instant only in the closet, and on account of the darkened condition therein, the witness Greenlee, during that instant, did not see what he did; but at all other times he saw him, and heard his statements coming from the closet. If, under the circumstances, it may be said that the appellant is entitled to the inference or presumption of due care under the "no eyewitness rule," still there is no error at this point. The inference or presumption in such cases may only be taken into consideration by the jury in connection with all the facts and circumstances shown upon the trial, in determining the question as to whether or not the deceased was free from negligence contributing to the injury; but the burden to show freedom from contributory negligence is upon the plaintiff, as instructed by the court. See *Wilson v. Chicago, M. & St. P. R. Co.*, 161 Iowa 191; *Wasson v. Illinois Cent. R. Co.*, 203 Iowa 705; *Phinney v. Illinois Cent. R. Co.*, 122 Iowa 488; *Frederickson v. Iowa Cent.*

*R. Co.*, 156 Iowa 26; *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142.

No amplification of the instruction was asked by the appellant. Under the circumstances as disclosed by the record, there is no error at this point.

The remaining complaint is as to the sustaining of appellee's objections to two questions propounded by appellant to a witness; but the record fails to disclose either by the form of the question propounded or by offer of testimony or otherwise, what the answer would have been. In such situation, no prejudicial error is shown. *First State Bank of Riverside v. Tobin*, 204 Iowa 456; *Schooley v. Efnor*, 202 Iowa 141; *Arnold v. Fort Dodge, D. M. & S. R. Co.*, 186 Iowa 538; *Arnold v. Livingstone*, 155 Iowa 601; *Reynolds & Heitsman v. Henry*, 193 Iowa 164; *Bomgren v. Hanish*, 194 Iowa 1117. In *Arnold v. Fort Dodge, D. M. & S. R. Co.*, supra, we held that the objection which was sustained was not good, but declared:

"The record, however, does not disclose in any way what the testimony of the witness would have been if the questions had been permitted. The error, therefore, is not a reversible one."

In *Reynolds & Heitsman v. Henry*, we said:

"We have repeatedly held that we will not reverse a case upon a ruling of this kind and send it back for a new trial, unless it is made to appear in some manner in the record what the answer of the witness would have been."

Our prior pronouncements upon this question are decisive of the contention urged at this point.

We have carefully considered the record and all of the assignments of error, and find no prejudicial error. The judgment of the trial court is hereby affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.