GRAND RAPIDS & INDIANA RAILWAY CO. *v.* L. STARKS CO.

1. EVIDENCE—OPINIONS—EXPERT TESTIMONY.
   In an action for the value of a freight car destroyed by fire, which plaintiff claimed resulted from negligence of defendant in firing and caring for a stove in the car, a witness was not improperly permitted to state that he did not see how the car could have caught fire from the stove which he had examined and filled with wood before he left on the night of the loss; the witness testifying that he had had experience in loading potatoes and in building fires in cars.

2. SAME—CHARGE—BURDEN OF PROOF—NEGLIGENCE.
   Nor did the court err in charging the jury that the burden of proof rested primarily on plaintiff, that negligence cannot be presumed, but must be proven, and that the mere fact of the accident was not sufficient evidence of liability.

3. NEGLIGENCE—FIRES—RAILROADS—DESTRUCTION OF CAR.
   Where the trial court placed the burden of proof on defendant
   to show that the persons in charge of the freight car fur-
   nished by plaintiff to be loaded by defendant and of the stove
   in the same, exercised due care, the instructions which fully
   covered the questions of due care submitting to the jury the
   issues of fact arising from the burning thereof, were as fa-
   vorable to plaintiff as it was entitled to.

Error to Kent; McDonald, J. Submitted June 19,
1912. (Docket No. 62.) Decided October 2, 1912.

Case by the Grand Rapids & Indiana Railway Company
against the L. Starks Company for the negligent burning
of a freight car. Judgment for defendant. Plaintiff
brings error. Affirmed.

*James H. Campbell*, for appellant.

*Hall & Gillard*, for appellee.

STEERE, J. Plaintiff brought this action in the circuit
court of Kent county to recover of defendant damages re-
sulting from destruction by fire of a car at a siding on the
line of plaintiff's railway in Osceola county, Mich.

Defendant is an Illinois corporation dealing in produce,
with an office in Grand Rapids, Mich., from which city
plaintiff's railway extends north to the Straits of Macki-
naw. When the car in question was burned, defendant
was engaged in buying potatoes along the line of plain-
tiff's road, shipping them in car load lots to various cities
where an advantageous market could be found.

On or about January 31, 1908, in the regular course of
its business, defendant ordered of plaintiff an empty car,
to be put on a side track of plaintiff's at a place called
"Dewing's Siding," there to be loaded by defendant with
potatoes to be shipped out over plaintiff's line. Having in
its possession, and available, a refrigerator car, suitable
for the purpose, belonging to the St. Louis Refrigerator
Car Company, of St. Louis, Mo., plaintiff sent the same

forward and placed it on the siding designated. It was there "spotted" on January 31, 1908, and was destroyed by fire on the night of February 4, 1908, while being loaded. Plaintiff was required to pay the owner of the car for its loss, amounting, with certain small incidental expenses, to $709.27, and thereupon instituted this action to recover the amount so paid, alleging that the fire which destroyed the car was imputable to defendant's negligence.

The case was tried in the circuit court before a jury, resulting in a verdict in favor of defendant. From a judgment entered on such verdict, plaintiff has removed the proceedings to this court for review on a writ of error.

Dewing's Siding was not a regular station on plaintiff's line. A country store was located there, near which a side track had been put in; the only other structure in the immediate vicinity being a small shanty in which to shelter freight. No representative of plaintiff was located at that point; the nearest station where there was an office and agent being Ashton, 2½ miles south. The records of any business done at Dewing's Siding were kept at Ashton, and this car was handled by the agent at that office.

William Danielson, who lived near Dewing's Siding and ran the store located there, was buying potatoes for defendant and loading them into this car. He had purchased them from surrounding farmers, and transferred them directly from the farmers' sleighs into the car, as they were delivered. The weather was cold, and the car was heated to keep the potatoes from freezing. Defendant had furnished Danielson a stove for that purpose, which he had set up in the car, building a fire in it on the morning of February 4, 1908, to warm the car before he commenced to receive the potatoes. Loading was started that day, and the work suspended at approximately 6 o'clock in the evening; the car being then about one-half loaded—500 bushels of potatoes having been delivered.

Danielson, whose home was some 20 or 30 rods from the siding, testified that he went to the car about 9 o'clock in the evening to put some more wood into the stove and see

that everything was all right.   He did not fill the stove, but put in three sticks of dry wood and one of green wood, to hold the fire, shut the stove door, and fastened it, closing the draft.   He left the west door of the car closed, on the side from which it was being loaded.   On the east side the permanent car door was fastened back by a hook regularly provided in such cars for that purpose, and a false door had been set in the doorway, thus closing the car on that side, and through this false door the stovepipe was projected.   After putting wood into the stove and arranging matters on the inside of the car, the last thing he did was to go outside upon the roof and examine the wiring on the pipe, which projected up outside of the car.   An east wind was blowing, and for that reason he wished to see if it was all right.   He testified that he so found it.

A Mr. Peterson, who lived near by, discovered the car was on fire some time after midnight and notified Danielson.   When they reached the car, they found it all aflame.   The fire was coming out of the door, and much of the roof was burned off.   They could do nothing to save the car or its contents.   The woodwork and body of the car were eventually entirely consumed.

Two trains are shown to have passed Dewing's Siding that night between 9 and 1 o'clock; the first being a freight train going north about 10 p. m., and the second a freight going south about 12:15 a. m.   The car on the side track was on fire when the latter train arrived.   As they were equipped, the train crew could do nothing to extinguish the fire.   They remained long enough to run their detached engine in on the siding and pull out another car standing near the one on fire, and then continued their run.

The records of plaintiff show that no snowplow passed that night; but three went over the line the next day, indicating a period of falling or drifting snow.

Various witnesses of experience, who had been engaged in shipping potatoes from 5 to 22 years, testified that it

was necessary and customary to install stoves in refrigerator cars used for shipping potatoes in winter, in order to prevent freezing; that for many years potatoes had been loaded each winter and shipped on plaintiff's line in cars heated by stoves, as in this case; that plaintiff's agents regularly saw and knew this; that no objection or rule of plaintiff to the contrary was known to them; that stoves like the one in question were regularly furnished by shippers to the loaders, with instructions to set them up in the car before starting to load.

Danielson had loaded cars with potatoes on plaintiff's line for five winters, putting into them such stoves provided by the shippers. The one he set up in this car was practically new, and of the kind usually furnished for the purpose. It was a round, sheet-iron stove, about $2\frac{1}{2}$ feet long, 20 inches to 2 feet in diameter, standing horizontally in the center of the car on legs; the door being on the top of the stove. The legs raised it 20 or 22 inches above the floor. A pipe, 4 or 5 inches in diameter, extended above the stove about 2 feet, then turned with an elbow through the false door placed in the opening for the regular door, which was fastened back. A sheet of tin, about 10 inches square, covered an opening cut in the false door, and the pipe ran through a hole cut in the center of the tin, which kept the pipe $2\frac{1}{2}$ or 3 inches from the surrounding wood. Beyond the false door, on the outside of the car, another elbow turned the pipe up, parallel with the side of the car, extending above the roof. A board reaching beyond the edge was nailed on the roof of the car, with nails driven part way into its projecting end. Against these nails, the pipe was held firmly by wire wound around it and tightened to other nails driven into the roof further back. On the inside the stove was held securely by nails driven into the floor through holes provided for that purpose in the bottom of the stove legs. This stove was set up in the car and fastened in the customary way to guard against fire, and withstand the ordinary movements incident to transportation in a freight

train, as described and testified to by experienced witnesses.

Error is assigned on the allowance of the following question asked the witness Danielson:

"From your knowledge of putting stoves in cars and building fires in them and leaving them at night, and your knowledge as to the manner in which you left this stove, was it possible for this car to catch fire from the stove?"

This was objected to as calling for a conclusion and a speculation. The witness answered: "I do not see how it could, hardly." The answer is in the nature of opinion evidence, which is admissible, as a rule, only in the examination of experts. The witness had experience and special knowledge in this work; but whether it is a subject for expert testimony might be open to debate. While the answer was rather a weak expression of opinion, the question, as asked, was for knowledge based on facts. The question related to the condition of the car and stove he had set up and the fire he had built. There is some room for contention that the door was opened for this line of inquiry by plaintiff's counsel in the previous cross-examination of a witness named Rehkoff, in part, as follows:

"*Q.* Have you ever had a car take fire from one of these?

"*A.* Not from the stove; no.

"*Q.* If they are properly put together, and the fire properly taken care of, you think it safe?

"*A.* It is safe.   *   *   *

"*Q.* Do you say if the stove, such as that, with a fire in, if properly taken care of, would communicate fire to the car within two or three hours after?

"*A.* I would not think it.

"*Q.* And if it did, if it was left that way, and it communicated fire, then you would say it was not properly taken care of and left there?

"*Mr. Hall:* I object.

"*The Court:* He has practically answered the question.

"*A.* Why, if it was not molested, it would be all right.

If the stove was properly put up and considered all right, it would not catch fire.

"*Q.* It would not take fire?

"*A.* No.

"*Q.* But if it was left at 10 o'clock, and it did set fire to the car before 12 o'clock, you would say it was not properly set up and taken care of?

"*Mr. Hall:* There is a further objection 'that the fire caught in this stove.'

"*Q.* I say, 'if it did.'

"*The Court:* Let him answer.

"*A.* Why, I would not know what to think of it, whether it caught fire from the stove or not, if the stove was properly cared for.

"*Q.* You have said if the stove was properly put up and properly cared for would not set the car on fire?

"*A.* I don't think it would."

In view of the foregoing, together with the rulings on somewhat similar questions in *Potter* v. *Railway Co.*, 157 Mich. 216 (121 N. W. 808, 22 L. R. A. [N. S.] 1039), and *Marcott* v. *Railroad Co.*, 49 Mich. 99 (13 N. W. 374), we do not think the answer given to the question objected to constitutes prejudicial and reversible error.

It is the position of plaintiff that, under the undisputed facts, defendant was liable for loss resulting from the fire, unless it proved by a preponderance of evidence:

(1) "That the fire which burned the car came from some source other than the fire in the stove in the car;" or (2) "that defendant exercised proper care in placing, securing, and using the stove and maintaining fire and leaving it for the night, and was not guilty of negligence therein." (3) "The burden of establishing one or the other of these facts by competent evidence is on defendant."

It is claimed these rules were not correctly or clearly presented to the jury, and that the instructions given were unwarranted and misleading, error being assigned to the charge of the court in instructing the jury that the burden of proof was on plaintiff to establish that it delivered the car to defendant, and it was burned while in its possession; that defendant was not liable if the car was in-

jured by accident, or some means for which defendant was without fault, or for any extraordinary circumstances, such as unusually high winds, acts of the elements, or other person or persons, providing defendant exercised due care in protecting the same from such causes; that the fact defendant built a fire in the stove in the car, and it was afterwards burned, did not, standing alone, prove negligence and want of ordinary care; and in the refusal of the court to instruct the jury, as requested, that the burden of proof was on the defendant to show freedom from negligence, if the jury should find that the car was burned from fire in the stove.

It was not error for the court to instruct the jury as to the general and well-settled rule that in this case, as in all negligence cases, the burden of proof primarily rested on plaintiff; that negligence cannot be presumed, but must be proven, and the mere fact of the accident is not sufficient to impose liability. *Le Baron* v. *Joslin*, 41 Mich. 313 (2 N. W. 36); *Renders* v. *Railroad Co.*, 144 Mich. 387 (108 N. W. 368).

While excerpts of the charge, considered separately, seem to present certain matters which are undisputed as open issues, the instructions, taken as a whole, are sufficiently clear to avoid any uncertainty or confusion in that respect. The following language is particularly alleged as error:

"The burden of proof is upon the plaintiff to convince you, by a fair preponderance of evidence, that it delivered the car to defendant, and that it was damaged while in defendant's possession."

Following this, the court further said:

"When plaintiff has shown that, it has made a *prima facie* case, and is entitled to a verdict, unless it appears that the defendant used ordinary care in protecting the car, while in its possession, from injury or damage, and the burden of proof is on the defendant to show that it did use such care in protecting the car. As I said, if you find that the defendant did not use ordinary care, your

verdict will be for the plaintiff.    If you find it did use ordinary care, your verdict will be for defendant, no cause of action."

The jury was also told that defendant was liable for the negligence of Danielson; also that—

" It appears by the undisputed evidence that the car in question was placed on the side track at Dewing's Siding on the 31st day of January, 1908, on order of L. Starks Company, the defendant, to be there loaded with potatoes for shipment out; that on the 4th day of February, the car was partly loaded with potatoes by William Danielson; that he left a stove, with a fire in it, in the car about 10 o'clock that evening, and left the car for the night; and the car was discovered to be on fire between 12 and 1 o'clock at night, and the body of the car, all the wooden parts, were burned that night, and the trucks and brakes slightly injured."

The court also concisely stated the issue to the jury, as follows:

" The question for you to determine is, Did the defendant exercise such care in protecting this car from injury and damage?    If it did—that is, if the defendant used ordinary care in protecting it from injury or damage—it would not be liable in this action, and the plaintiff cannot recover.    If it did not use such care, it would be liable, and the plaintiff can recover."

It was the contention of defendant that a verdict should have been directed in its favor, for the reason that the proof of plaintiff did not establish a *prima facie* case; that no proof was produced as to how the car caught fire; that the cause was unshown and unknown, and it was not proven to be negligent to set up the stove in the car and leave a fire in it; that negligence could not be inferred from the bare occurrence of the fire, and no surrounding circumstances were shown from which negligence necessarily or naturally was to be inferred—citing *Wood* v. *Railway Co.*, 51 Wis. 196 (8 N. W. 214), and *Renders* v. *Railroad Co.*, *supra.*

The rights and responsibilities of parties connected with the destruction by fire of a potato car, in which a stove

had been set up and a fire maintained, is discussed in three opinions growing out of the same transaction, rendered by the Supreme Court of New Hampshire: *Rolfe* v. *Railroad,* 69 N. H. 476 (45 Atl. 251); *Boston & Maine Railroad* v. *Sargent,* 70 N. H. 299 (47 Atl. 605), and *Id.,* 72 N. H. 455 (57 Atl. 688).

In those cases it appeared Sargent had contracted with the railroad to carry a car load of potatoes over its line for him. He agreed that the company should not be liable for damages to his potatoes from heat or cold, and he was given control of the interior of the car. He set up a stove in the car and maintained a fire therein. This stove was shown to have been defective, being broken across the bottom. While the car was standing on the track near Rolfe's storehouse, having been left with a fire in the stove, it, another car, and the storehouse were burned. The cars belonged to another railroad company, and the Boston & Maine Company was required to pay the owners for the same, and to pay Rolfe for the destruction of his storehouse. Having paid for the cars destroyed and the judgment obtained by Rolfe, the railroad company brought an action to recover the amounts so paid from Sargent, on the ground that the fire was caused by his negligence, or that of his agent. It was there held—

" That the burden of proof upon all the issues raised by both counts [the losses occasioned by the destruction of Rolfe's storehouse and of the two cars] was upon the plaintiffs. The fact that the defendant had the exclusive control of the interior of the potato car did not alter the situation in this respect."

This is contrary to plaintiff's contention that proof of the destruction of the car by fire, while defendant was in control of the said car and maintaining a fire in it while engaged in its loading, established liability, unless defendant proved itself free from negligence. But the court did, as we have shown, put the burden of such proof on defendant, in whose behalf testimony was introduced to the effect that it was necessary and customary to maintain fires in

stoves in such cars while being loaded with potatoes in the winter; that this was known and permitted by plaintiff; that the stove was sound, of the kind commonly used, and was properly set up in the usual manner; that due care was exercised in firing and caring for the same, thus squarely raising an issue of fact for the jury as to defendant's negligence. We think, under the authorities cited, that the charge of the court upon that issue was fully as favorable to the plaintiff as it was entitled to.

The judgment is affirmed.

MOORE, C. J., and MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.