ALICE BOLES, Administratrix, Appellant, v. HOTEL MAYTAG COMPANY, Appellee.

No. 43127.

Fᴇʙʀᴜᴀʀʏ 18, 1936.

Campbell & Campbell, for appellant.

Huebner & Huebner, M. R. Hammer, Jr., and H. B. White, for appellee.

Mᴛᴄʜᴇʟʟ, J.—This is the second time this case has been before this court. Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N. W. 515.

The writer of this opinion found it necessary to dissent in the former appeal. But when the opinion was adopted by a majority of this court, it became the law. The only right the minority has is to express its views, which right was exercised in this case. See dissenting opinion, 218 Iowa, page 317, 253 N. W. 520.

If this case were here on the record now before us as an original submission, the writer would find himself again compelled to dissent, but with the law of the case established by this court, it must be followed.

No good could be accomplished by repeating the facts and circumstances covering the claims made in this case. They are adequately and fully set out in the original opinion.

In the original submission this court held that appellant's

decedent was guilty of contributory negligence as a matter of law.

The first hurdle that confronts the appellant is to show that she has produced sufficient new evidence to escape the conclusion reached in the former opinion. To do this, she relies upon two new theories. First, there is evidence in this record that Charles W. Boles was hard of hearing and that at the time that L. J. Dietz, the engineer of the hotel, told him that the safety device on the east door was out of order, the elevator was running; that on account of the fact that Boles was hard of hearing and because of the noise that was going on at the time that Dietz told him the safety device was out of order, it was for the jury to say whether or not Boles heard what Dietz told him on that occasion. There might be something to this claim if it were not for the fact that Dietz testified that at the time that he told Boles the safety device was out of order he (Dietz) pointed to the safety device, which was in plain view, and that at that time Boles was looking in that direction. The undisputed record shows that the safety device was so dismantled that even the ordinary layman would have known it was out of order by simply looking at it, whereas Boles, who was an expert electrician, would have had no trouble in ascertaining the fact that the device was not working.

The other evidence which the appellant relies upon is the testimony of the witness Frank Siddall, as follows:

"Mr. Boles went over to the west door and closed it and then he told me to go over and close the east door so we could move the elevator."

It must be kept in mind that if the safety device with which the elevator was equipped was in working order, the platform of the elevator could not have been moved if the west door was open, nor could it have been moved if the safety device on the east door had been in working order if that door was open. The inference which the appellant would have drawn from the testimony offered is that appellant's decedent did not know that the safety device on the east door was out of order, for if he had known he would not have said to Siddall, after closing the west door, "Close the east door so we could move the elevator," for the elevator could have been moved without the door being closed, the safety device not being in working order.

The trouble with appellant's theory is that the elevator should not have been moved, even if the safety device on the east door was out of order, with the east door open, because there was nothing to prevent any one from falling into the pit if the east door was open and the platform of the elevator was not there, there being no guard on the east door. So it is just as reasonable to believe that Boles was closing the east door to prevent any one from falling into the elevator pit, before he moved the platform of the elevator, as it is to believe that he was closing it with the thought in mind that it was necessary to do so before the elevator platform could be moved.

In view of the opinion of this court in the first case, we find no evidence offered here which would make it a jury question to decide whether or not the appellant's decedent was guilty of contributory negligence. This was also the view of the distinguished and able trial judge who listened to the evidence in both trials in the lower court, and when the motion to direct was submitted to him in this case, said:

"Ladies and gentlemen of the jury: At the close of all of the evidence the defendant made a motion for a directed verdict; it is proper to tell you that this case has been tried once before, and that I was the Judge that tried it, that it was appealed and the Supreme Court reversed the judgment of the lower court; I have tried it again this time; it was reversed the former time because the Supreme Court held that as a matter of law Mr. Boles was guilty of negligence which contributed to his injury and death. The evidence is substantially the same this time as it was that time. I cannot see any difference, and therefore, I have sustained the motion for a directed verdict on the authority of the Supreme Court in the former case, so this case is over, and Mr. Birchnell will you step forward and sign the verdict that the court reporter has here?"

The appellant further complains that the court erred in withdrawing and not considering the allegations of count II of the plaintiff's petition, in which she alleged that the appellee was liable under the doctrine of res ipsa loquitur.

This is a point that was not before this court on the former appeal, for the reason that the appellee was then appealing and the appellant made no complaint of errors committed against her since there had been a judgment entered in her favor. It

is the claim of the appellee that the doctrine of res ipsa loquitur does not apply because the uncontradicted record shows that at the time the decedent was fatally injured the elevator involved was not under the exclusive control and management of the defendant, but instead, it was at least partly under the control and management of the decedent and R. D. Nicholson, an independent contractor and his employees.

In the case of Aita v. John Beno Co., 206 Iowa 1361, at page 1365, 222 N. W. 386, 387, 61 A. L. R. 351, this court said:

"Plaintiff invokes the doctrine of res ipsa loquitur, 'the thing speaks for itself.' But this thing in question here does not speak for itself. The control of the pole is not shown to have been exclusively in Baron, as against the motions of the plaintiff and others. The instrumentality was not peculiarly, in that respect, within Baron's control. It is manifest that no presumption of want of ordinary care on the part of Baron is raised by the facts shown in evidence. That the accident was the proximate result of such negligence, rather than numerous other possible causes, including the negligence of the plaintiff herself, is wholly conjecture. The facts shown are as consistent with other hypotheses, including that of plaintiff's negligence, as with the theory of defendant's negligence. The doctrine of res ipsa has no application to the facts of this case."

Again in Larrabee v. Des Moines T. & A. Co., 189 Iowa 319, at page 324, 178 N. W. 373, 375, of the opinion this court said:

"It is to be remembered that the doctrine of *res ipsa* does not ordinarily apply unless it is made to appear that all the instrumentalities which would be likely to cause the accident were under the exclusive control and management of the defendant, and that the accident was such as would not ordinarily occur if due care had been exercised in the control of such instrumentalities. There is no dispute in the evidence in this record. The details of the construction are shown by the evidence on both sides. It is undisputed that the structure was put together in proper form. The evidence does not disclose the actual cause of the collapse, but the whole tendency is to show that there must have been some interference with the supports. It may be that so temporary a structure, built for the purpose of being quickly knocked down, should have been carefully

guarded, for the few moments of its occupancy, against interference by pedestrians or bystanders. But no such duty devolved upon this defendant. Its employees, having completed the structure, left it to the control of the defendant Bittle, as they had a right to do. Upon the whole record, therefore, our conclusion is that the trial court properly directed a verdict for this defendant.''

This record shows without contradiction that this freight elevator was on the night of this unfortunate accident being used by one R. D. Nicholson, who was an independent contractor, as well as by appellant's decedent, and that Boles and the other independent contractor at least in part controlled and managed the operation of the elevator on the night of the accident.

The appellant's theory of how this accident happened is that one E. B. Lynch, who was a painter, working for another independent contractor, was on one of the upper floors of the hotel and desired to use the freight elevator. He pushed the control button, and at the time that he did this Boles was bending over, pushing down the east door; that there was a sudden jerk and this threw Boles off his balance and he was caught between the platform and the door. Under this theory the doctrine of res ipsa loquitur would not apply because the decedent's injury was due at least in part to the elevator being moved by the painter Lynch, who was an employee of an independent contractor and over whom the appellee had no control.

The appellant cites and argues with a great deal of force that the case of Class v. Y. W. C. A. (1934) 47 Ohio App. 128, 191 N. E. 102, 104, is directly in point with the case at bar. In that case the Ohio court said:

''It appears from the record that the plaintiff, William A. Class, was a delivery man for a laundry company which did business with the Young Women's Christian Association. He was required in the course of his work to go to the building of the Young Women's Christian Association twice a day to collect laundry from and deliver laundry to various floors.

''The only facilities for getting from floor to floor was an elevator of the kind called semiautomatic. The elevator could be run by pushing the buttons, or, if desired, could be operated by a controller in the hands of an elevator operator. * * *

"As he made a step southward to pass from the car, the car suddenly moved upward. It caught him, carried him half way up the shaft between the two floors, turned him upside down, and he then fell into the shaft beneath the car, breaking his fall to some degree by seizing the dangling cables and landing on his feet. His injuries were serious, consisting chiefly of fractures of the heel bones, back injuries and injuries to the hands and arms. * * *

"The record, as it stands, does not permit of any dispute that had the elevator mechanism been in normal condition the car of necessity would have been required to stand still when the door was open, and that no manipulation of the operator, or of the controller, or pushing of buttons on the upper floors, could have disturbed it in any way. * * *

"It is also urged that the plaintiff was in control of the instrumentality, and that some one on the upper floor might have been the cause of the movement of the car by pushing a button. * * *

"In the case at bar the plaintiff, as an invitee, had used the elevator in the usual way, and for no ascertainable reason the elevator had suddenly risen.

"We can see no logical distinction between a falling elevator and an ascending elevator. In the case of a falling elevator it is well-settled law that an inference may be drawn from the mere accident itself, and requires a submission of the case to the jury upon the mere showing that the elevator fell. In the case of an ascending elevator, where it is shown, as it was in this case, that in its normal operation the opening of the door would cause the elevator to remain immobile, and that notwithstanding the fact that the door remained open the elevator ascended and caused the injury, the same logical inference may be drawn, namely, that since the elevator is under the exclusive management and control of the defendant, and the accident in the ordinary course of events would not have happened had due care been exercised, it was due to some defect in construction of the elevator, or to lack of care in its maintenance. * * *

"It seems evident that although the plaintiff opened the elevator door, and was in physical charge of same, he cannot be legally deemed in possession or control of the instrumentality. The act of plaintiff in opening the elevator door did not place him in possession and control of the instrumentality. He had

a right to depend upon the normal operation of this type of car which called for the same to remain immobile while the door was open.

"In our opinion a clear case for the application of the doctrine of res ipsa loquitur is presented, and it follows that the trial court was in error when it directed a verdict for the defendant."

While we cannot say that we approve of that part of the rule set out in the Ohio case, we do not believe it applies to this case, for in the case at bar there is no evidence to show that Boles was on the elevator or near the elevator when Lynch pushed the button.

How did this accident happen? Was Boles inside the elevator at the time that it occurred? There is nothing in the record to prove that. It is but pure surmise, conjecture, and speculation. Did the moving of the elevator platform when Lynch pressed the button cause the accident? We are unable to say from the record that is before us. Whether Boles fell or slipped as he closed the east door and fell to the bottom of the pit, we do not know. From the condition of the record, with no proof as to how this injury occurred, the lower court was right in withdrawing and not considering the allegations of count II.

The motion of appellee to strike brief of appellant, submitted with the case, is hereby overruled.

It therefore follows that judgment and decree of the lower court must be, and it is hereby, affirmed.

DONEGAN, C. J., and ALBERT, ANDERSON, KINTZINGER, HAMILTON, and RICHARDS, JJ., concur.