## HIGHLAND GOLF CLUB OF IOWA FALLS, IOWA, v. SINCLAIR REFINING CO.

Civ. No. 101.

District Court, N. D. Iowa,
Cedar Rapids Division.

Feb. 3, 1945.

912

Leming & Hobson, of Hampton, Iowa, and E. L. Ackerman, of Iowa Falls, Iowa, for plaintiff.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, Iowa, and C. A. Bryson, of Iowa Falls, Iowa, for defendant.

GRAVEN, District Judge.

Case involving application of doctrine of res ipsa loquitur. On motion to direct verdict at close of plaintiff's evidence. The plaintiff, an Iowa corporation, on June 16, 1944, owned, operated and maintained a club house on a golf course in the city limits of Iowa Falls, Iowa, which was used by the members of the club for recreational, social and entertainment purposes. On that day the club house with its contents was entirely destroyed by fire. The building and contents had a very substantial value. The plaintiff claims that the fire was caused by the negligence of one

of the defendant's servants, a Mr. Nock, in connection with delivering gasoline at the club house. The plaintiff seeks to establish the negligence of the defendant by invoking the doctrine of res ipsa loquitur. The club house building was a substantial building, being approximately 100 feet in length and approximately 45 feet in width. The building was a one story building with a basement under a part of it. The ground on which the building was situated sloped away to the south from the rear of the building, so that entry into the basement on the south end was nearly level with the surrounding ground.

The first room of the basement from the south was a room approximately 18 feet by 25 feet. It was used by the plaintiff for a garage, work room and storage room. Immediately to the north of this room was a shower bath room. That room had originally been somewhat smaller, but when shower bath equipment was put in the south wall of the room was moved south several feet for all of the distance except a small portion at the west end. Because all of the wall was not moved south this left a small recess or sort of cubbyhole at the west end. In this recess the plaintiff kept a gasoline barrel resting on its side on a rack. A few feet to the east of this recess in the same room the plaintiff had a gas water heater for the heating of water for shower baths. Whether the pilot light or large burner were on at the time in question, does not appear. There were double doors aggregating around eight feet in width opening into the garage basement room from the south, and because of the ground formation the plaintiff's tractor could be driven directly into it. The tractor was kept in this garage room when not in use, but was not in the garage at the time in question. In this garage room the plaintiff kept its gasoline, oils and greases, and other supplies needed in connection with the operation of its tractor. This garage room was also used for general storage purposes, such as for the storing of commercial fertilizer, and tools and supplies used in connection with the keeping up of the golf course. This portion of the basement was underneath the kitchen of the club house. The floor of the basement was concrete. It appears that the club house was wired for electricity.

Between 2 and 3 o'clock p. m. on June 16, 1944, the defendant's servant, Mr. Nock, delivered approximately fifty-five gallons of gasoline into the plaintiff's gasoline barrel. The gasoline was delivered from a tank truck driven by Mr. Nock. Mr. Nock in making the delivery had backed the tank truck up so that the back end of the truck was close up to or just outside the open double doors leading into the basement from the south. Mr. Nock was called by the plaintiff to testify as to his being an agent of the defendant, but was not examined as to the origin of the fire. Mr. Nock did testify that he had made the delivery of the gasoline, so that it appears that he had put the gasoline into the barrel. It does not appear whether Mr. Nock made the delivery by connecting a hose between the tank truck or the barrel, or whether he had filled the barrel by means of buckets. The plaintiff put on one witness as to the commencement of the fire. This witness, one Dr. Schalk, a member of the plaintiff club, was on a golf green about three rods away at the time in question. He looked up and saw smoke coming out of the basement garage. He ran over to the basement door. He met Mr. Nock running from the back end of the tank truck. While so running, Mr. Nock exclaimed, "My God, I knew it would happen sometime." Mr. Nock drove his tank truck beyond fire range and then returned to the scene of the fire. The witness did not observe any gasoline pails or buckets. The exclamation of Mr. Nock is more enigmatic than enlightening as to what took place. There was no testimony as to any explosion. The plaintiff in its petition stated that the manner in which the fire was started was unknown to it.

This action was originally started in the state court and was then removed to this court because of diversity of citizenship, and is therefore within the scope of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Under that case the state law as to res ipsa loquitur governs. Coca-Cola Bottling Co. of Henderson v. Munn, 4 Cir., 1938, 99 F.2d 190; F. W. Martin & Co. v. Cobb, 8 Cir., 1940, 110 F.2d 159, 163; 3 Cyclopedia of Federal Procedure, 2d Ed., Sec. 629. In the instant case the defendant is sought to be held liable for starting the fire that destroyed the club house and contents. Apart from statute, liability for damage caused to others by fire is based upon negligence, and one seeking to recover such damages has the burden of proving the negligence of the party charged. Bushnell v. Telluride Power Co.,

914

10 Cir., 1944, 145 F.2d 950. Res ipsa loquitur is a rule of evidence. Vergeldt v. Hartzell, 8 Cir., 1924, 1 F.2d 633; Peterson v. De Luxe Cab Co., 1938, 225 Iowa 809, 281 N.W. 737, 738; Savery v. Kist, Iowa 1943, 11 N.W.2d 23; Olson v. Cushman, 1937, 224 Iowa 974, 276 N.W. 777. As a rule of evidence res ipsa loquitur assists the party having the burden of proof in establishing the negligence of the party sought to be charged. Whitmore v. Herrick, 1928, 205 Iowa 621, 218 N.W. 334, 337. A party in order to obtain such assistance must first present sufficient proof of the existence of the elements necessary to bring the rule into operation. The essential elements furnishing the foundation for the rule are primary, the proof resulting from the rule is secondary. Whitmore v. Herrick, supra. The rule means that the facts of an occurrence warrant the inference of negligence. Sutcliffe v. Fort Dodge G. & Elec. Co., 1934, 218 Iowa 1386, 1395, 257 N.W. 406. While proof of the essential elements warrants the drawing of such an inference it does not compel it to be accepted as sufficient by the jury. Sutcliffe v. Fort Dodge G. & Elec. Co., supra. While proof of the essential elements does require an explanation or rebuttal of the inference by the party sought to be charged, it does not convert such party's general denial into an affirmative defense, and the burden of proof is not changed. Sutcliffe v. Fort Dodge G. & Elec. Co., supra; Sweeney v. Erving, 1913, 228 U.S. 233, 240, 33 S. Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D, 905. Even where the defendant does not put on any evidence to rebut the inference of negligence, arising under the rule of res ipsa loquitur, a directed verdict in favor of the plaintiff is not justified. See, 153 A.L.R. 1136, and also Anderson v. Ft. Dodge D. M. & S. R. Co., 1929, 208 Iowa 369, 226 N.W. 151, 157. Where the rule of res ipsa loquitur is applicable, this does not change the rule that the plaintiff must plead and prove his freedom from contributory negligence. Blackman v. Iowa Union Electric Co., Iowa 1944, 14 N.W.2d 721. As to distinctions between res ipsa loquitur and circumstantial evidence, see Eickhoff v. Beard-Laney, 199 S.C. 500, 20 S.E.2d 153, 141 A.L.R. 1013. While sometimes in connection with the rule, the term "presumption" is used and sometimes the term "inference" is used, and while technically speaking the terms are of different legal significance, and while the Iowa Supreme Court in its more recent decisions makes use of and indicates its preference for the use of the term "inference", yet the Iowa Court recognizes that they are used interchangeably. Harvey v. Borg, 1934, 218 Iowa 1228, 257 N.W. 190, 192; Savery v. Kist, Iowa 1943, 11 N.W.2d 23, 25. The terms are recognized as being used interchangeably in other types of cases. State v. Hartwick, 1940, 228 Iowa 245, 290 N.W. 523; State v. Crutcher, 1941, 231 Iowa 418, 1 N.W.2d 195; Bridges v. Welzien, 1941, 231 Iowa 6, 10, 300 N.W. 659. As to presumptions or inferences, see 25 Iowa Law Review 817; Heffter v. Northern States Power Co., 1927, 173 Minn. 215, 217 N.W. 102, 103; 153 A.L.R. 1135, 1136; also, Techniques in the use of Presumptions by Edmund M. Morgan, 24 Iowa Law Review 413. Sometimes the term "prima-facie evidence" is made use of in place of the term "presumption" or "inference". Welsch v. Charles Frusch L. & P. Co., 1924, 197 Iowa 1012, 193 N.W. 427. Cases where the plaintiff relies upon res ipsa loquitur, and the defendant moves for a directed verdict, generally fall into two classes. One type of case is where the plaintiff has made sufficient proof of the essential facts to call into operation the rule of res ipsa loquitur but claims that the inference of negligence has been rebutted or overcome as a matter of law. While in the case of Dierks Lumber & Coal Co. v. Brown, 1927, 19 F.2d 732, the Eighth Circuit Court of Appeals held that the defendant had rebutted the inference as a matter of law so as to be entitled to a directed verdict, yet in the later cases of Southern R. Co. v. Hussey, 8 Cir., 1930, 42 F.2d 70, 74 A. L.R. 1172, May Department Stores Co. v. Bell, 8 Cir., 1932, 61 F.2d 830, and Terminal R. Ass'n of St. Louis v. Staengel, 8 Cir., 1941, 122 F.2d 271, 136 A.L.R. 789, that Court has made it clear that a very impressive showing is required in that type of case to warrant the directing of a verdict. The other type of case where the plaintiff relies upon res ipsa loquitur, and the defendant moves for a directed verdict, is where there is involved the question as to whether the plaintiff has presented a foundation for giving rise to the inference of negligence. The instant case is of this last type. The inference arises from the foundation facts, the inference does not supply the foundation facts from which it arises. In the case of Monaghan v. Equitable Life Ins. Co., 1918, 184 Iowa

352, 168 N.W. 892, on page 893, the Iowa Supreme Court states: "But that certain evidence will raise a presumption of negligence does not in the least tend to establish that there is such evidence; and presumption warranted by the existence of certain facts in no evidence of the existence of such facts."

In cases where the plaintiff relies upon res ipsa loquitur the Court must first decide under the well-established rules having to do with the respective provinces of the Court and the jury, whether there is such evidence as to the existence of the foundation facts as to warrant submission of the case to the jury upon the theory of res ipsa loquitur. This, of course, is an entirely different matter than the Court deciding as a matter of law that the inference of negligence arising from the foundation facts had been overcome or rebutted. In the case of Heffter v. Northern States Power Co., 1927, 173 Minn. 215, 217 N.W. 102, 103, it is stated: "The importance of the doctrine of res ipsa loquitur is found in the province of the trial court, and not in the province of the jury. It is called upon, in the first instance, to say whether there is any evidence of negligence to go to the jury."

The Iowa rule as to res ipsa loquitur is that where a plaintiff has been injured or suffered damage from instrumentalities in the exclusive management and control of the defendant, and the happening of the occurrence causing the injury or damage is such as in ordinary cases does not occur or happen if those in such control and management were not negligent, that the causing of such injury or damage permits but does not compel an inference that the defendant was negligent. Monaghan v. Equitable Life Ins. Co., 1918, 184 Iowa 352, 168 N.W. 892; Larrabee v. Des Moines T. & A. Co., 1920, 189 Iowa 319, 178 N.W. 373; Boles v. Hotel Maytag Co., 1926, 221 Iowa 211, 265 N.W. 183; Peterson v. De Luxe Cab Co. et al., 1938, 225 Iowa 809, 281 N.W. 737; Savery v. Kist, Iowa 1943, 11 N.W.2d 23; Welch v. Greenberg et al., Iowa 1943, 14 N.W.2d 266. The relation of the rule of res ipsa loquitur to the oft-quoted statement that no presumption of negligence arises from the mere happening of an accident is well stated by the Iowa Supreme Court in the case of Cahill v. Illinois Cent. R. Co., 1910, 148 Iowa 241, 125 N.W. 331, on page 332, 28 L.R.A.,N.S., 1121, where it says:

"Counsel for appellee say that no presumption of negligence arises from the mere happening of an accident. A better statement of this rule is that no presumption of negligence arises from the mere fact of injury to the plaintiff. Such presumption may and often does arise from the nature of the cause or manner of the injury." It has been pointed out, however, that the line between evidence supplied by circumstances of the accident and evidence related thereto is very dim. Vergeldt v. Hartzell, 8 Cir., 1924, 1 F.2d 633, 634. There are those who are of the view that the whole rule is a play upon words. In an opinion by Judge Eugene O'Dunne of Baltimore, reported in 5 Case & Comment 1938–1939 No. 1, it is stated in regard to the doctrine of res ipsa loquitur: "It is a pious symbol, long used by the priests of the law to exorcise spirits. It is some of that ancient and sacred legal nomenclature which means nothing more than a statement that the 'obvious is self-evident.'"

The Iowa Supreme Court has repeatedly referred to the need and necessity of the defendant having exclusive control of all the instrumentalities causing the damage or injury to the plaintiff as a prerequisite to the application of res ipsa loquitur. Larrabee v. Des Moines T. & A. Co., 1920, 189 Iowa 319, 178 N.W. 373; Aita v. John Beno Co., 1928, 206 Iowa 1361, 222 N.W. 386, 61 A.L.R. 351; Boles v. Hotel Maytag Co., 1926, 221 Iowa 211, 265 N.W. 183; Peterson v. De Luxe Cab Co. et al., 1938, 225 Iowa 809, 281 N.W. 737; Schroeder v. Kindschuh, 1940, 229 Iowa 590, 294 N.W. 784; Whetstine v. Moravec, 1940, 228 Iowa 352, 291 N.W. 425; Rodefer v. Turner, 1942, 232 Iowa 691, 6 N.W.2d 17; Welch v. Greenberg, Iowa 1943, 14 N.W.2d 266. In the case of Aita v. John Beno Co., supra, the Iowa Supreme Court in addition to making use of the term "exclusively" in connection with the matter of control of the instrumentalities, makes use of the term "peculiarly". In the case of Whetstine v. Moravec, supra, 291 N.W. at page 433, the Iowa Supreme Court states that it is a necessity that there be "complete and exclusive control."

The Iowa rule in regard to the necessity of complete and exclusive control is in accord with other authorities. 45 C.J. p. 1214; Transportation Co. v. Downer, 1870, 78 U.S. 129, 11 Wall. 129, 20 L.Ed. 160; San Juan Light & Transit Co. v. Requena, 1912, 224 U.S. 89, 32 S.Ct. 399, 56 L.Ed.

680; Mathews v. Chicago & N. W. R. Co., 1925, 162 Minn. 313, 202 N.W. 896. In the case of Transportation Co. v. Downer, supra, the United States Supreme Court makes use of the term "immediate" control. In the case of Mathews v. Chicago & N. W. R. Co., supra, 202 N.W. at page 900, the Minnesota Supreme Court states that where there is not exclusive control, "That alone is an insurmountable obstacle to the application of the res ipsa rule."

In the case of Vergeldt v. Hartzell, 1924, 1 F.2d 633, 635, the Eighth Circuit Court of Appeals in discussing res ipsa loquitur, states: "In discussing this rule Dr. Wigmore, in Wigmore on Evidence, § 2509, says: 'What its final accepted shape will be can hardly be predicted. But the following considerations ought to limit it: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.'" Thus it is to be noted that in res ipsa loquitur cases that the right of inspection and user of the instrumentalities is an element to be considered, since they are obviously rights and duties inherent in exclusive control.

The general run of cases where res ipsa loquitur is relied on are cases where the defendant is the owner or operator in charge and control of a premises and is being sued by a plaintiff who was on the premises for proper reasons. In the instant case it is the other way around, the owner and operator of a premises is suing the party who (by its servant) came on to the premises.

The question of the application of the doctrine of res ipsa loquitur to situations where gasoline or oil is being delivered has not squarely arisen in Iowa, but there are a number of cases from other jurisdictions where that question has been involved. In the case of Mondine v. Sarlin, Cal.App.1937, 72 P.2d 930, the plaintiff with a tank truck came to the defendant's petroleum plant to get gasoline. The defendant's storage tank being empty, the plaintiff agreed to assist in moving same from a storage tank to the dispensing tank. The plaintiff drove over to the storage tank and with a part of hose belonging to him and a part belonging to the defendant, made connection between the storage tank and his tank truck. The defendant's servant started the gasoline pump and then left, leaving the plaintiff with the pumping. An explosion took place injuring the plaintiff. It was held that the rule of res ipsa loquitur was not available, the California Appeals Court stating on page 932 of 72 P.2d: "The doctrine of res ipsa loquitur applies only where the instrumentality causing damage is in the possession and under the control of the defendant. * * * Hence, in the instant case this doctrine is inapplicable, since it is conceded that the motor and pump at the time of the accident and for some period prior thereto were in the exclusive possession and under the control of plaintiff."

In the case of Weaver v. Shell Co. of California, 1936, 13 Cal.App.2d 643, 57 P.2d 571, the situation was that the Pacific Gas & Electric Company maintained a garage to service its motor vehicles. This garage faced on an alley. The plaintiff's intestate worked in the oil room of the garage. The defendant's driver came to the premises to deliver gasoline. The defendant's tank truck was parked outside the garage and the tank or tanks were being filled by a hose. An explosion took place in which the plaintiff's intestate was killed. The plaintiff relied upon res ipsa loquitur. On page 572 of 57 P.2d the California Appeals Court states: "The defendants assert that said doctrine was inapplicable. They specify several grounds. Among others, they contend that the doctrine was inapplicable because the instrumentality causing the accident was not under the exclusive control of the defendants. There was no direct evidence as to what caused the fire. The defendant corporation had brought on to the premises gasoline in a motortruck. When it arrived on the premises, the Pacific Gas & Electric Company already had on the premises quantities of gasoline and certain appliances and equipment. While Bodilly was making his delivery, other equipment of the Pacific Gas & Electric Company drove up to the gas station, took deliveries, and left. In no manner in which the facts are viewed can it be said that the defendant corporation was in the exclusive control and management of the instrumentality causing the injury complained of. It is therefore clear for that reason the facts in the instant case did not warrant the

application of the doctrine of res ipsa loquitur."

In the case of Gerald v. Standard Oil Co. of Louisiana, 1943, 204 La. 690, 16 So. 2d 233, the situation was that the plaintiff and his wife were tenants of part of a building. The landlord used part for a filling station. Fumes came into the plaintiff's bedroom and an explosion occurred. The defendant, Coca-Cola Company, had built a sign which obstructed the vent pipes for the gasoline. The defendant, Standard Oil Company, was filling the landlord's tanks with gasoline at the time of the explosion. The plaintiff sued the landlord, the Standard Oil Company and the Coca-Cola Company. The trial court held there was no cause of action stated except as to the landlord. The Louisiana Court of Appeal (an intermediate appellate court) held (10 So.2d 409), that the only cause of action stated was against the Standard Oil Company and that upon specific acts of negligence and not res ipsa loquitur. The Louisiana Supreme Court held that a cause of action was stated against all three defendants, stating on page 236 of 16 So.2d: "It is our opinion that the exceptions of no cause of action of all defendants should have been overruled in their entirety and the cause tried on its merits. The controversy is one in which the doctrine of res ipsa loquitur is possible of application; however, it is not necessary to hold at this time, and we do not so hold, that such doctrine is applicable." The Louisiana Supreme Court on page 237 of 16 So.2d, goes on to state: "The plaintiff, to some extent, relies upon the doctrine of res ipsa loquitur (the thing speaks for itself). This is a rule of evidence peculiar to the law of a limited class of negligence cases; but where, as stated, the defendant has no control over the premises, or where there is a divided responsibility and the damage may have resulted from a cause over which the defendant had no control, all of the authorities hold, or at least the great weight of authority is, that the rule cannot be successfully invoked."

The case of Langhoop v. Richfield Oil Corporation, 1940, 259 App.Div. 964, 21 N.Y.S.2d 416, was an appeal from an order denying motion to dismiss complaint. The facts pleaded were that the plaintiff's intestates occupied a room over a tool shed; that while gasoline was being delivered by the defendant to some third parties by filling a tank in the tool shed that a fire or explosion took place. The court held that res ipsa loquitur was not applicable.

The leading case on the question is the case of Starks Food Markets v. El Dorado Refining Co., 1943, 156 Kan. 577, 134 P.2d 1102. The case arose on a demurrer to the petition. The court on page 1106 of 134 P.2d states as follows in regard to the allegations of the petition: "Summarized it is charged that defendants' gasoline truck was driven within the Uptown Garage and while gasoline was being delivered to a portable tank the driver negligently caused or permitted the gasoline to ignite; that at the time of the delivery there was no one in the garage except the driver of the gasoline truck, and that the gasoline, gasoline truck and the delivery of the gasoline were in the exclusive and sole control, care and supervision of the defendants. * * * However, giving to the allegations of the amended petition a liberal interpretation, it is apparent there is no allegation that the defendants were in charge of or had any control of the portable tank or where it sat inside the garage. The petition is silent about the location of the receiving portable tank, or who determined or controlled it, and about the situation in the garage. We do not know from the petition whether there were gas or electric motors being operated in the garage, whether its doors were opened or closed, whether there was any fire to heat the garage, whether it was free from explosive fumes or vapors, or what the situation was except that in making delivery the defendants were in charge of their tank truck and its contents. If on trial the facts alleged were all that were shown, the trier of the fact could only indulge in conjecture as to the cause of the fire. In such case the doctrine of res ipsa loquitur should not be applied." The same court on page 1105 of 134 P.2d states in regard to the applicability of res ipsa loquitur: "It is not only necessary to show that the offending instrumentality was under the management of the defendant, but it must be shown that it proximately caused the injury, or that the injury was caused by some act incident to the control of the instrumentality. The doctrine does not apply where the agency causing the accident was not under the sole and exclusive control of the person sought to be charged with the injury. If it appears that two or more instrumentalities, only one of which was under defendant's control contributed

to or may have contributed to the injury, the doctrine cannot be invoked. * * *"

Apparently a number of people were injured or suffered damages because of the fire described in the case of Starks Food Markets v. El Dorado Refining Company, supra. Another party who suffered damage by the same fire, brought suit in federal court. Bruening v. El Dorado Refining Co., D.C.Mo.1943, 53 F.Supp. 356. There again the question arose as to the sufficiency of the allegations of the complaint. In the federal court complaint it was stated that the defendant used a gasoline tanker to deliver gasoline into portable tanks at a garage owned by a third person, and that the driver allowed gasoline to run on to the wooden floor and be ignited. The defendants' motion to dismiss was sustained. The court on page 357 of 53 F. Supp. states: "It can hardly be said that the tanker was in any way involved in the occurrence. It had been used to transport oil into the garage. While there the operator or driver undertook to siphon gasoline from the tanker into portable tanks. The portable tanks were under the control of the garage owners. It is charged that the operator was negligent in spilling gasoline on the floor in making transfer or delivery through a hose. Nowhere did complainants assert that the instrumentalities used were unsafe or defective. * * * It should be stated, moreover, that according to the law the rule of res ipsa loquitur 'cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed.'"

In the case of Tyreco Refining Co. v. Cook, Tex.Civ.App.1937, 110 S.W.2d 219, the defendant was owner and in control of the operation of an oil refinery. A truck of a third party was being filled with gasoline at the refinery. The plaintiff came on the premises on a business errand. As he neared the truck an explosion took place. The Texas Civil Appeals Court held that the res ipsa loquitur doctrine was applicable saying that the evidence would warrant a finding that the operation of the refinery and the loading of the truck was under the management and control of the defendant.

In a case somewhat analogous the Minnesota Supreme Court held in the case of Nelson v. Zamboni, 1925, 164 Minn. 314, 204 N.W. 943, that where the plaintiff who had been granted the privilege of the rest room facilities at a filling station and was injured by a gasoline explosion, that the doctrine of res ipsa loquitur was applicable. In that case the court refers to the fact that the control and operation of the station was entirely in the defendant. In that case also there was no doubt about the fact that gasoline was the cause of the explosion.

It is well settled that one who delivers or handles fuel oil or gasoline is liable for negligence in connection therewith. J. J. Mayou Mfg. Co. v. Consumers Oil & Refining Co., Wyo.1944, 146 P.2d 738, 151 A.L.R. 1243 with note. Accord, Johannsen v. Mid-Continent Petroleum Company, 1942, 232 Iowa 805, 5 N.W.2d 20; Chapman v. Pfaar, 1911, 153 Iowa 20, 132 N.W. 957. However, negligence in such handling must be specifically shown, except in that narrow class of cases where the circumstances are shown to be such as to bring into operation res ipsa loquitur.

It would seem clear that when an owner of a premises orders merchandise delivered to such premises, that such owner does not intend to confer or does confer upon the deliveryman control over such premises or any portion thereof, or control over the receptacles or containers in which the merchandise is to be placed, or any other personal property of the owner. It would seem clear that the only things over which such delivery man has control is the delivery vehicle and the appliances used in connection therewith. It might be noted that a delivery man is an invitee, and further noted that the owner of a premises owes to invitees the duty of using ordinary care to keep such premises in a reasonably safe condition so as not to unreasonably or unnecessarily expose them to danger. La Sell v. Tri-States Theatre Corporation, Iowa 1943, 11 N.W. 2d 36, 45.

The rule to be deducted from the authorities seems to be that where a vendor delivers gasoline to a premises where all of the premises including the receptacles into which delivery is being made, are under the control and management of the vendee and not the vendor, and an explosion or fire takes place at or immediately following delivery, that the situation lacks the element of exclusive control of the instrumentalities which is necessary to give rise to the doctrine of res ipsa loquitur.

In the instant case there is lacking some features which are present in a number of the cases referred to. In the instant case there was no evidence of an explosion. In the instant case there is no evidence that the gasoline was the first substance to be ignited or that the fire started where the gasoline was. From the evidence it is impossible to state whether the fire started somewhere else in the room than where the gasoline was located, or whether the fire crept in from the adjoining room, or thru the floor from the kitchen above. In the instant case there is no evidence of any spilling or overflowing of gasoline, and it would be a mere conjecture to so assume. The material circumstances from which an inference of negligence is to be drawn cannot be a matter of guess or conjecture. Aita v. John Beno Co., 1928, 206 Iowa 1361, 222 N.W. 386, 61 A.L.R. 351.

There is another feature to be noted in the instant case. There was no evidence of an explosion, there was only evidence that a fire started. In situations having to do with substances like gasoline the line between an explosion and fire is not always distinct and they are sometimes closely connected with each other. Apart from statute, the Courts have been very reluctant and sparing in drawing an inference of negligence from the starting of a fire. Brown v. Standard Oil Co., 2 Cir., 1917, 247 F. 303; Grand Rapids & Indiana R. Co. v. L. Starks Co., 1912, 172 Mich. 270, 137 N.W. 551, Ann.Cas.1914C, 632; Le Zotte v. Lindquist, 1927, 51 S.D. 97, 212 N.W. 503; Smith v. Gilbert Yards, S.D.1944, 16 N.W.2d 912. In the case of Brown v. Standard Oil Co., supra, 247 F. on page 305, which involved a fire, the Court states: "The oil company was carrying on a lawful business, and one in which, from its nature, fires were likely to occur. Therefore the principle of res ipsa loquitur does not apply." In the case of Le Zotte v. Lindquist supra, the defendant's building caught fire and spread to the plaintiff's building and the plaintiff sought to rely upon res ipsa loquitur. The South Dakota Supreme Court denied its applicability stating on page 505 of 212 N.W.: "Consequently, we find that, when this doctrine of res ipsa loquitur is applied to fires, 'the general rule is that the destruction of property by fire does not raise a presumption of negligence either in the kindling or the management of the fire. * * *' 29

Cyc. 595." The inapplicability of the rule of res ipsa loquitur is held even where the defendant is in exclusive control of the structure or building in which the fire started. Smith v. Gilbert Yards, supra, Grand Rapids & Indiana Railway Co. v. L. Starks Co., supra. In the case of Smith v. Gilbert Yards, just referred to, the owners of a building containing several apartments were in charge and control of an oil burner in the basement which heated the apartments. While the oil tanks were being filled, fire broke out of the oil burner and damaged personal property belonging to one who occupied one of the apartments. The South Dakota Supreme Court stated (16 N.W.2d at page 912) that "The oil burner was in the exclusive control and management of the defendants * * *." The plaintiff claimed that since the exclusive management and control of the furnace and the fire was not one which would occur in the ordinary course of affairs, if due care had been exercised, and that the doctrine of res ipsa loquitur should apply. The South Dakota Supreme Court held (16 N.W.2d at page 913) that the occurrence of the fire raised no presumption of negligence and that res ipsa loquitur was not applicable.

The courts have seemed less reluctant to apply the doctrine of res ipsa loquitur in explosion cases. See 25 C.J. p. 205; 35 C.J.S., Explosives, § 11. The reason for this is presumably that an explosion is more unusual than a fire, and generally so much more localized as to cause as to be regarded as speaking more clearly for itself.

Statistics show that the fire loss for the United States for 1943 was $373,000,000, and the estimated fire loss for 1944 was $423,458,000, and that the number of fires reported in Iowa in 1944 was 3608 and the amount of fire loss was $4,246,400. Fires generally originate in buildings which are under exclusive control of either the owner or the tenant, and frequently cause large damage or destruction to adjoining or nearby buildings. The courts recognize that fires are frequent occurrences and in a great many cases without any negligence on the part of anyone. Because of this, the doctrine of res ipsa loquitur is applied only in exceptional cases in the cases of fires. If the rule of res ipsa loquitur were to be applied generally in cases of fires, it would be obvious that the owner or tenant in control of a building in which a fire

920

started would in a great many cases be held to a calamitous liability for a non-negligent occurrence.

It is the holding of the Court in the instant case that the plaintiff's proof is lacking as to the foundation facts upon which res ipsa loquitur can be predicated, and that a verdict should be directed for the defendant.